This action was originally instituted against the North Carolina Railroad, a corporation of this State, having its franchise and owning a railroad property here, and the Southern Railroad, a corporation of the State of Virginia, operating the road of its codefendant under a 99-year lease, and which, among other things, provides "for the liability of the Southern Railway Company for all of its acts and defaults in the operation of said road" and for a deposit of "not less than $175,000 in cash, or its equivalent, to be applied" to the performance of the stipulations in the contract of lease to be performed by the lessee, and among them, "to pay any judgments recovered in any court of the State or of the United States when finally adjudicated for any tort, wrong, injury, negligence, default on contract done, made, or permitted by the parties of the second part, its successors, assigns, employees, agents or servants, for which the party of the first part shall be adjudged liable, whether the party of the first part is sued jointly with or separately from the party of the second part."
The complaint alleged, and there was evidence on part of plaintiff tending to show, that a portion of the North Carolina Railroad included in the lease, to wit, from Greensboro through Spencer to Salisbury, N.C. was a part of the trunk line of the Southern Railroad from North to South, "along and over which it was and is engaged, by and with the consent of the North Carolina company, in transporting interstate commerce from Virginia and all points of North to South Carolina, Georgia, and other points south, etc."; that plaintiff, at the time, was a locomotive engineer, in the employment of the Southern Railroad, for the purpose of transporting freight trains containing interstate commerce from, to, and between "Spencer, N.C. and Monroe, Va., and along the main line of the Southern Railroad, a part of which said line included that portion of the North Carolina Railroad from Greensboro to Spencer," and had been for some time prior to the occurrence engaged on this run with an engine, No. 579; that the engine had been taken to the shops of the Southern at Spencer, and, having been overhauled and repaired, it was on a side-track near the shops of the company, steamed up and ready, and plaintiff was engaged in oiling and inspecting the same for the purpose of presently making a trial to Barber's Junction, a point in North Carolina on the Western North *Page 403 
Carolina Railroad, some distance beyond Salisbury, and thus to test the engine with a view of further service"; that while so engaged, he received serious physical injuries by reason of some defects in the structure or adjustments of the engine, the same being attributed to the negligence of the defendant, the Southern Railroad, the facts as to negligence and the nature and extent of the injury being given; that this particular engine had been for some time engaged in the through freight service from Spencer, N.C. to Monroe, Va., and since plaintiff was injured it had been doing the same work; that plaintiff was assigned to the work and had been engaged in it till his engine was taken to the shop for repairs, and during that time the plaintiff had no regular run.
On his cross-examination, and speaking to the circumstances of his employment and duties, the witness, in answer to questions, said:
Q. Where you were going, or whether you were to do work running inside or outside of the State, you did not know? A. I was marked on the division from Spencer to Monroe. I knew I was (489) to do any kind of work that I stood for — relief work for other men running on this line I was assigned to. I was not supposed to run to Barber's Junction. My assignment was not that way. If I had been called to go to Statesville under the supervision of a competent man, I would have gone, or to Wilkesboro. I would have gone anywhere in the State if they had sent a competent man to carry me there and bring me back. I didn't know the road. I went to Selma occasionally. I think I went to Goldsboro one trip and carried a switch engine; that is in North Carolina.
Q. I ask you if it was not your habit to go anywhere your call was indicated by the company as an extra engineer? A. I didn't belong to go there. It was left discretionary whether I did go.
Q. Wasn't it your habit to go wherever they called you to go as an extra engineer? No, sir.
Q. Did you ever refuse to go? A. Yes, sir.
Q. Where? A. A good many different places. I refused to go on the branch road. I refused to go to the western part of North Carolina, Asheville, and I refused to go to Charlotte. I have run on the road from Selma to Monroe. That is on this division. I run between Selma and Norfolk when the division extended there. All the men had to run into Virginia out of Selma. At the time I was hurt I was not a regular engineer with a regular run.
Speaking to the place of the injury, the witness said: "The engine was standing on a side-track, at or near the cinder pit of the company, about halfway between the shops and the main line of the North Carolina Railroad, and more than 100 feet from said main line and the side-track *Page 404 
connected with the North Carolina Railroad at the north end of the Spencer yards and with the double-track part of the North Carolina Railroad on the south part of the Spencer yard leading to Salisbury, and there was no way of getting off that side-track and onto the main line except over the North Carolina Railroad."
In apt time, and accompanied by a proper bond, the defendant, the Southern Railway Company, filed its petition for removal, duly verified, setting forth its position as to the exact nature and proper place of the occurrence, and containing averment that plaintiff was an employee of the Southern Railroad, and not otherwise, as locomotive engineer, his duty being to engage in his work as directed and at any place on the lines of the company; that the exact place of the occurrence was on the yards of the company near its shops, the same having been purchased and owned by the company and the shops built and used for repair and other work for engines and cars used on all portions of the company's system; that it was entirely off the right of way of the North Carolina Railroad and formed no part of that company's property; that the engine in question was subject to be used on any of the roads of the Southern, and at the time of the injury it was on this company's property, preparatory to taking a trial trip by Salisbury and on to Barber's Junction, points entirely within the State of North Carolina, and that no freight was to be handled by said engine on said trip and no cars of any kind were to be attached thereto. That all these facts were well known to plaintiff when he instituted his suit and filed his complaint, and that said North Carolina Railroad Company had been fraudulently joined in said suit, and the allegation that plaintiff was at the time engaged in interstate commerce had been falsely and fraudulently made with the sole purpose of preventing a removal of the case to the Federal courts, and with no bona fide purpose of obtaining the relief against said North Carolina Company, as stated in the complaint. On this matter the express averment of the petition was as follows:
"Your petitioner says that the plaintiff, at the time he received the injuries complained of, was an employee of your petitioner, and not an employee of its codefendant, the North Carolina Railroad Company, and was not, and never had been, an employee of the said North Carolina Railroad Company, and that all the said facts herein set forth, with reference to the lease, the location and situation of the cinder pit and side-track, and the duties which plaintiff was to perform on the day in question, were well known to plaintiff when this action was brought and complaint filed. Your petitioner further says, that to avoid the removal of this case by it to the Federal court, *Page 405 
the plaintiff joined the North Carolina Railroad Company, a North Carolina corporation, and falsely and fraudulently alleged in his complaint that the side-track upon which the engine was located at the time he was injured was `one of the side-tracks of the North Carolina Railroad Company's main line at Spencer,' and falsely and likewise fraudulently alleged in his complaint that he suffered injury while employed by your petitioner in interstate commerce, and falsely and fraudulently alleges that he was engaged in interstate commerce at the time of his injury, and that said engine was likewise so engaged, when, at the time said allegations were made, plaintiff well knew that they were untrue, or could by the exercise of the slightest diligence have ascertained the true facts in connection therewith; and your petitioner further states that plaintiff did not and does not expect to establish said allegations, and did not make them for the purpose of proving them at the trial or substantiating his cause of action therewith, but made them solely for the purpose of setting up a joint cause of action against the defendants, as lessor and lessee, and to state a cause under the Federal Employers' Liability Act in order to make a case which would not be removable to the Federal court."
The petition for removal having been denied at December Term, 1911, the petitioner excepted and appealed, but without prosecuting its appeal and reserving any and all exceptions to the rulings of the court, the defendants answered, again setting up the exact nature and place of the occurrence as claimed by them and denied any and all liability on the part of the North Carolina Railroad Company, and for both companies denied any and all negligence, setting up the defense of contributory negligence, etc.
The cause coming on for trial on the issues so raised, at February Term as stated, at the close of plaintiff's evidence and by reason chiefly of the place of the occurrence as described by plaintiff, the court having intimated "that there was no case made out against the North Carolina Railroad Company," the plaintiff takes a nonsuit as to (492) said North Carolina Railroad Company. See judgment. Thereupon, defendant, the Southern Railroad, filed its second petition for removal, accompanied by proper bond, on the ground of diversity of citizenship, and renewing its allegation of fraud in general terms and chiefly by reference to the former petition.
The court entered judgment removing the case, and plaintiff excepted and appealed, assigning errors as follows:
Plaintiff's Exception No. 1: For that the court permitted the defendant Southern Railway Company to file a new petition and bond for removal to the Federal court. *Page 406 
Plaintiff's Exception No. 2: For that the court entered an order removing the cause to the Federal court for trial.
Plaintiff's Exception No. 3: For that the court held that there was no sufficient evidence against the North Carolina Railroad Company to entitle the plaintiff to recover as against it, and for that the court dismissed the action as to the North Carolina Railroad Company and removed the cause to the Federal court for trial as against the other defendant, the Southern Railway Company.
The plaintiff in express terms bases his cause of action on the Federal Employers' Liability Act of 1908 (35 U.S. St., 65 Ch., 149) as amended on 5 April, 1910 (36 U.S. St., 291 Fed., 143), and in his complaint makes allegation sufficient to establish liability on the part of both of defendant companies. The statute in question confers a right of action against all common carriers by railroad engaged in interstate commerce and in favor of all employees "while engaged in such commerce or their representatives when injured or killed by reason of the negligence of any officers or agents of the employee of such carrier or by reason of any defect or insufficiency due to its negligence in its cars, engines, appliances, machinery, track, roadbed, ways or walks."
The law in question has received very full consideration by the Supreme Court of the United States in several cases reported in223 U.S. p. 1, styled the Second Employers' Liability cases, and it was there held, among other things: "That the same is constitutional; that its provisions and regulations have superseded the laws of the several States in so far as the latter cover the same field; and that rights arising under the regulations prescribed by the act may be enforced as of right in the courts of the States where their jurisdiction as fixed by local laws is adequate." And the amendment of 1910 contains provision that "The jurisdiction of the courts of the United States under this act shall be concurrent with that of the courts of the several States, and `No case arising under this act and brought in any State court of competent jurisdiction shall be removed to any court of the United States.'" 36 U.S. St., Ch. 143, p. 291.
It was no doubt the purpose and effect of this amendment, as its terms clearly import, to withdraw the right of removal in cases arising under the statute when the action has been instituted in the State court, and to require that litigants desiring to have the results of the trial *Page 407 
reviewed by reason of the presence of the Federal question, etc., shall proceed by writ of error to the State court making final disposition of the cause in its jurisdiction. All the decisions to which we were referred upholding the right of removal in such cases (Lemon v. R. R., 137 Ky. 276;Calhoun v. R. R., 528, and others) were causes disposed of prior to the amendment, and which no doubt gave rise to its enactment.
And if, as defendants contend, the same right of removal exists as in cases of fraudulent joinder of a resident with a nonresident defendant, the application should be denied in this instance. On this question the authorities are to the effect that when viewed as a legal proposition the plaintiff is entitled to have his cause of action considered as he has presented it in his complaint (R. R. v. Miller, 217 U.S. 209;R. R. v. Thompson, 200 U.S. 206; Dougherty v. R. R., 126 Fed., 239), and while a case may in proper instances be removed on the ground of false and fraudulent allegation of jurisdictional facts, the right does not exist, nor is the question raised by general allegations of bad faith, but only when, in addition to the positive allegation of (494) fraud, there is full and direct statement of the facts and circumstances of the transaction sufficient, if true, to demonstrate "that the adverse party is making a fraudulent attempt to impose upon the court and so deprive the applicant of his right of removal." Rea v.Mirror Co., 158 N.C. 24-27, and authorities cited, notably, R.R. v. Herman, 187 U.S. 63; Foster v. Gas and Electric Co., 185 Fed., 979; Shane v. Electric Ry., 150 Fed., 801; Knuttsv. Electric Ry., 148 Fed., 73; Thomas v. R. R., 147 Fed., 83; Hough v. R. R., 144 N.C. 701; Tobacco Co. v. TobaccoCo., 144 N.C. 352; R. R. v. Houchins, 121 Ky. 526; R.R. v. Gruzzle, 124 Ga. 735.
True, it is now uniformly held that when a verified petition for removal is filed, accompanied by a proper bond, and same contains facts sufficient to require a removal under the law, the jurisdiction of the State court is at an end. And in such case it is not for the State court to pass upon or decide the issues of fact so raised, but it may only consider and determine the sufficiency of the petition and the bond. Herrick v. R. R.,158 N.C. 307; Chesapeake v. McCabe, 213 U.S. 207; Wecker v. NaturalEnameling Co., 204 U.S. 176, etc. But this position obtains only as to such issues of fact as control and determine the right of removal, and on an application for removal by reason of fraudulent joinder such an issue is not presented by merely stating the facts of the occurrence showing a right to remove, even though accompained [accompanied] by general averment of fraud or bad faith, but, as heretofore stated, there must be full and direct statement of facts, sufficient, if true, to establish or demonstrate the fraudulent purpose. Hough v. *Page 408 R. R., 144 N.C. 692; Tobacco Co. v. Tobacco Co., 144 N.C. 352;Shane v. R. R., 150 Fed., 801. In Rea v. Mirror Co.,supra, the principle was applied where plaintiff had sued a nonresident corporation doing a manufacturing business in this State, to recover for physical injuries suffered by plaintiff and alleged to be by reason of some negligence of the company in the operation of its machinery, and a resident employee was joined as codefendant. The nonresident company, in apt time, filed its duly verified petition, accompanied by proper (495) bond, setting forth the facts of the occurrence with great fullness of detail, charging a fraudulent joinder of the resident employee, and containing averment further that "said employee was a member of the company's clerical force in the office of the company, having nothing whatever to do with the machinery or its management, and that he was not present in the factory at the time of the injury." The petition for removal was allowed, the Court being of opinion that, if these facts were established, it would make out the charge of fraudulent joinder and bring the case within the principle of Wecker v. NaturalEnameling Co., 204 U.S. 176; but no such facts are presented here. While the petitioner alleges a fraudulent joinder of the North Carolina Railroad and denies that the plaintiff was engaged in interstate commerce, etc., it will appear from a perusal of the pleadings and the admissions of record not inconsistent therewith, that plaintiff, at the time of the injury, was an employee of the defendant as locomotive engineer; that he had been operating the engine in question over a portion of the North Carolina Railroad, used as a part of the north and south trunk line of the Southern Railway and on to Monroe in the State of Virginia, and engaged in moving interstate freight trains; that this engine, having been taken to the shops for repairs, was at the precise time of the injury on a side-track connecting with the North Carolina Railroad main line, ready for a trial trip to Barber Junction, and plaintiff was engaged in inspecting and oiling said engine for the purpose of taking said trip and with a view of further service for the company. It has long been understood that the term interstate commerce will include the instrumentalities and agencies by which the same is conducted, and that the power of Congress will extend to the regulation of these instrumentalities, including the right to legislate for the welfare of persons operating the same (Employers' Liability cases,223 U.S. 1; Interstate Commerce Commission v. R. R.,215 U.S. 452), and from the admitted facts of defendant's petition and some of the recent decisions construing this statute and that entitled "Safety Appliance Act," 27 U.S. Statutes, ch. 196, said by an intelligent (496) writer to be of great aid to the proper construction of the former, *Page 409 
Thornton on Employers' Liability and Safety Appliance Act (2 Ed.), p. 40, there is grave reason to doubt if plaintiff's allegations as to the character of this transaction are not properly made (R. R. v. U.S.,222 U.S. 20; Johnson v. R. R., 196 U.S. 1; Thornton (2 Ed.), p. 50et seq.), and assuredly it may not be said that the charge of fraud must be necessarily inferred.
As to the judgment of nonsuit, submitted to by plaintiff, in deference to an adverse intimation of his Honor, here we are required to consider the case as presented by the allegations and evidence of the plaintiff and interpret such evidence in the light most favorable to him (Henderson v. R.R., 159 N.C. 581; and Deppe v. R. R., 152 N.C. 79), and, considering the record in that respect, it will appear that plaintiff, at the time of the injury, was an employee of the defendant, the Southern Railroad, assigned for duty over that part of the line from Spencer, N.C. to Monroe, Va., and had for some time been engaged on Engine 579 in hauling interstate freight trains over this part of the Southern system, and which included that portion of the North Carolina Railroad between Spencer and Greensboro. That this was being done by the Southern road with the consent of the North Carolina Railroad, and while operating under the franchise of that company. That at the precise time of the injury, the engine was on a siding, and while off the right of way of the State road, the siding was connected with the main line of such road at either end and the engine was being oiled and inspected by plaintiff with the present purpose of making a trial trip from Spencer to Barber Junction, which could only be done by passing over a portion of the State road, and it was always necessary for engines repaired in said shops to pass over the lines of the North Carolina road in order to get on the other lines of the Southern.
Without present and final decision of the question thus presented, we are clearly of opinion that it is a permissible inference from these facts that, as to the North Carolina Railroad also, the plaintiff's cause of action is well laid, and the order of nonsuit must be reversed. R. R. v.U.S., 222 U.S. 20; Logan v. R. R., 116 N.C. 940.
Having held that the cause has been erroneously nonsuited as (497) to the North Carolina Railroad Company, the petition for removal on the ground of diversity of citizenship (the second petition) is necessarily denied; and in any event, this would be the correct view. It is true that when a suit has been instituted against a resident and a nonresident defendant, and pending the cause plaintiff elects to discontinue his suit as to the resident party, the right of removal by reason of diversity of citizenship will then arise to the other (Powers *Page 410 v. R. R., 169 U.S. 92); but that is when the discontinuance is by voluntary action of the plaintiff, and does not obtain when the nonsuit has been taken in deference to an adverse intimation of the court and the plaintiff is insisting on his right to have the same reviewed on appeal, and is in a position to assert it. This we think is a fair interpretation of the record. The court having made the entry and entered same in the judgment that the nonsuit was taken in deference to an adverse intimation of the court, and plaintiff having made this as one of his assignments of error, in such case the order of nonsuit must be considered as having been taken in invitum (Hayes v. R. R., 140 N.C. 131; Mobley v. Watts,98 N.C. 284), bringing the case within the principle of Whitecombe v.Southern, 175 U.S. 635, and requiring that the right of removal should be made to depend upon conditions existent at the time of filing the first petition.
The order of removal and order of nonsuit will be set aside and the cause restored to the docket for trial as originally instituted.
Reversed.
Cited: Smith v. Quarries Co., 164 N.C. 352; Lloyd v. R. R., 166 N.C. 27;Hollifield v. Telephone Co., 172 N.C. 720.