Application to remove the cause to the Federal Court.
The action was to recover damages for an alleged joint tort on the part of the defendant company, a foreign corporation, and C. L. Welsh and Julius Eller, two of its resident employees and agents, having charge and control of the company's operations in this State, by reason of the negligent killing of plaintiff's intestate.
The complaint, stating the grievance with great fullness of detail, alleges in effect that the intestate at the time was a mere child, between 14 and 15 years of age, and in the employment of defendant company as tool carrier, a position of comparative safety, and was under the supervision and control of the two resident defendants as managers and agents of defendants' work at their quarries in Rowan County. That the intestate, a boy without experience or training in such work, was by negligence of the defendant company and its said employees put to drilling holes in a pit at the quarry for the purpose of blasting out the rock, a work of greatly increased danger and entirely unfitted for him to do. That he was there given careless and incompetent associates and improper and negligent orders, and by reason of this wrong on the part of the defendants there was an unexpected or premature explosion, causing the death of the intestate.
Making further statement of the wrong complained of, the complaint (340) alleges:
"That plaintiff's intestate was a mere child, inexperienced and ignorant of the dangers incident to operating a monkey drill and the explosion and blasting of rock and stone by means of dynamtite [dynamite], and that *Page 272 
it was gross negligence and carelessness on the part of the defendants to place said intestate of such immature years and experience about, in, and near such dangerous work and premises; and that it was negligence and carelessness on the part of the said defendants to remove said intestate from a place of safety to one of danger; that it was further negligence and carelessness on the part of the defendants to order and command and require said intestate to do work of a man and operate a monkey drill, and it was further negligence and carelessness on the part of the defendants to fail to warn and instruct intestate of the danger incident to the performance of the new duties, and that it was gross negligence and carelessness on the part of the defendants to place said intestate to drill holes in a stone that was then already loaded and charged with dynamite and to fail to inspect and see that said stones were free from dynamite; and it was further carelessness and negligence on the part of the defendants to fail to unload and remove said dynamite from the holes in said stones before requiring said intestate to drill new holes therein; that defendants were negligent and careless in that their orders and commands given to said intestate were dangerous and unsafe and improper for a mere child of inexperience to obey; that defendants were also negligent in that they placed incompetent and reckless superintendents and boss men over said intestate and other employees and required said intestate to obey the same; that the defendant the Harris Granite Quarries Company was further negligent and careless in that the defendant Julius Eller was an incompetent, improper, and unsafe man to have in charge of the quarry pit and be over said intestate and other employees therein; that the said defendant was negligent in that it placed as general superintendent over its quarries and the employees working therein one C. L. Welsh, who was inexperienced and (341) incompetent to give orders and instructions, and in that it required its employees and plaintiff's intestate to obey said orders of the said Welsh and the said Eller."
Defendant company having given proper bond in time, filed its application for removal to the Federal Court, duly verified and accompanied by supplemental affidavits, made part of the petition, in terms as follows:
"That your petitioner, the Harris Granite Quarries Company, is a corporation duly and originally created, organized, and existing under and by virtue of the laws of the State of Maine, and respectfully shows to this honorable court:
"That it is one of the defendants in the above entitled civil action, which was begun against it in the Superior Court of Rowan County, North Carolina, by the issuance and service of summons. That the plaintiff *Page 273 
has filed a complaint in the above entitled action. That your petitioner files this its petition at and before the time it is required to answer or demur to the complaint in said action.
"That the matter and amount in dispute and in controversy in the above entitled action exceeds the sum of $3,000, exclusive of interest and cost, and it is a civil action for the recovery of damages for an alleged personal injury resulting in wrongful death. That the controversy in said action is, and was at the time of the commencement of this action, between citizens of different States, the defendant, the Harris Granite Quarries Company, your petitioner, being at the time of the commencement of the action, and being still, a resident and citizen of the State of Maine, and a nonresident and not a citizen of the State of North Carolina, and the plaintiff W. F. Smith being then, and still, a resident and citizen of the county of Rowan and State of North Carolina; both the plaintiff and your petitioner being actually interested in said controversy at the time of the beginning of this action, and at this time.
"That the defendants C. L. Welsh and Julius Eller, citizens of the State of North Carolina, were not, at the time of the alleged accident or personal injury resulting in death, and prior thereto, personally charged with the duty of providing the plaintiff's intestate with (342) reasonably safe, suitable, and proper tools and appliances, and reasonably safe premises and places to perform his duties, reasonably skilled and experienced foremen, superintendents, boss men, and fellow-servants, sufficient in number and diligence, especially to look out after a blast alleged to have been made and ascertain whether all the dynamite in any blast made had been discharged before requiring the plaintiff's intestate to enter or go where any explosion had been made or attempted; and your petitioner further avers that it did in all respects comply with and perform its said duty with respect to the safety of plaintiff's intestate; and your petitioner further avers that these duties devolved upon your petitioner alone, and are and were nonassignable, and that the defendant Julius Eller and C. L. Welsh never, in any manner, assumed the performance of said duties, and that they were never in any manner charged with the performance of said duties, and that they were not in any manner jointly liable with your petitioner for any alleged negligence in these respects.
"Your petitioner especially avers that the defendant C. L. Welsh had nothing whatever to do with the employment of plaintiff's intestate, or with the employment of tool carriers or hole drillers, and that he did not on 2 July, 1913, or on 1 July 1913, or at any other time, remove the plaintiff's intestate from a place of safety to one of danger; and *Page 274 
further avers that he had only a casual acquaintance with plaintiff's intestate, and knew nothing of his employment in the capacity of a monkey driller at the time and place alleged in the complaint, and was not present or in any wise connected with the alleged injury causing the death of the plaintiff's intestate.
"That the rights of the real parties in interest to this controversy can be finally adjudicated without the presence of the defendant C. L. Welsh; that the defendant C. L. Welsh is an improper party to this proceeding; that he had no connection therewith, and that he is an unnecessary party. That the defendant C. L. Welsh has been improperly and fraudulently joined as defendant in this action for the purpose of fraudulently (343) and improperly preventing, or attempting to prevent, your petitioner from removing this cause to the United States District Court, and that the plaintiff well knew at the time of the beginning of this action that C. L. Welsh was not charged with the duties aforesaid, as alleged in the complaint, and that he was joined for the sale and only purpose of preventing the removal of this cause, and not in good faith.
"And your petitioner further avers that the plaintiff's intestate was employed more than six months prior to his alleged death, with the written consent of his parents or guardian, to work in your petitioner's quarry. That he was a young man above the average in intelligence, and well developed physically, and he continued as an employee in your petitioner's service as tool carrier more than six months from the time he entered said service, during all of which said time he became familiar with the operations in and about your petitioner's quarry, and was associated daily with the employees in your petitioner's quarry, who were engaged in the operation of handling monkey drills, or compressed-air drills, and that the position of compressed-air driller was one of natural promotion from that of tool carrier; that the plaintiff's intestate some two weeks prior to his alleged death urged upon your petitioner that he desired to be promoted to the position of monkey driller, and stated that he was fully qualified and capable of handling a monkey drill, and fully understood its operation, which said operations are of a very simple nature and character. By reason of and in consequence of this request, your petitioner employed the plaintiff's intestate as a monkey driller, and gave him careful and specific instructions as to the performance of his duties, which duties he performed daily up to the time of his death. Your petitioner further avers that the plaintiff administrator in the aforesaid action was at the time of filing his complaint, and at the time of the alleging a joint and concurrent negligence on the part of the defendants in said action, well acquainted with the facts *Page 275 
herein set out, and well knew that the allegations set forth in paragraph 7 of his complaint were false and untrue, and well knew the facts to be as heretofore alleged in this petition, and well knew that the plaintiff's intestate was not suddenly changed from the capacity (344) of tool carrier on 2 July, 1913, to that of monkey driller, and well knew that this alleged change was not made under the immediate orders, command, and control of the defendants C. L. Welsh and Julius Eller.
"Your petitioner particularly avers that the said allegations set forth in said paragraph 7 of the plaintiff's complaint, of joint and concurrent negligence on the part of the defendants C. L. Welsh and Julius Eller, and your petitioner, were made by the plaintiff administrator for the sole purpose of fraudulently defeating your petitioner in its effort to have the case removed to the United States Court under the acts of Congress made and provided in such cases. That the rights of the real parties in interest in this controversy can be finally adjudicated without the presence of either of the defendants Julius Eller and C. L. Welsh, and that the said defendants Julius Eller and C. L. Welsh are improper parties to this proceeding, and have no connection therewith, and are unnecessary parties; that the defendants Julius Eller and C. L. Welsh have been improperly and fraudulently joined as defendants in this action, and that said plaintiff, administrator, knowingly made false and fraudulent allegations in his complaint of joint and concurrent negligence on the part of the defendants in said action for the purpose of fraudulently and improperly preventing or attempting to prevent this petitioner from removing this cause to the United States District Court, and that the plaintiff well knew at the time of the beginning of this said action that the said defendants Julius Eller and C. L. Welsh were not necessary or proper parties, as alleged in the complaint, and that they were joined as parties defendant for the sole and only purpose of preventing the removal of this cause, and not in good faith.
"Your petitioner further alleges that its codefendant Julius Eller was not present at the time of the accident resulting in the death of plaintiff's intestate, and did not give at that time any order or command to plaintiff's intestate, but, on the contrary, the said Julius Eller at the time the plaintiff's intestate was first employed as a monkey driller, which was about ten days prior to his death, gave the plaintiff's intestate specific instructions as to the use of the monkey drill, and as (345) to all his duties connected with said employment, and especially warned him never to drill in any old holes, or in any old rock or boulder of granite that had holes in it or that were charged with dynamite or other explosives. That the plaintiff's intestate had been employed about *Page 276 
six months as a tool carrier, and that his duties as such tool carrier required him to visit places where holes were being drilled, and in this way the plaintiff's intestate became thoroughly acquainted with the duties and work of a monkey driller, and well knew from his experience and observation and from the instructions he received from the defendant Julius Eller that a monkey driller was required to drill only new holes, and was forbidden by the rules of the company to tamper with the holes that had been charged with dynamite or other explosive. That your petitioner employs specially trained men for the purpose of inspecting and cleaning out all old holes that have been exploded, or that have been filled with dynamite or other explosive, and had formulated and published rules forbidding monkey drillers to work on any granite, rock, or boulder until after the old holes had been inspected and cleaned out, and the plaintiff's intestate had been thoroughly instructed as to these matters, and well knew that a monkey drill was never used, and never allowed to be used, for cleaning out old holes, but that such holes were cleaned out with tools made of wood. Your petitioner further avers that plaintiff's intestate had been working as a monkey driller for about ten days prior to his death, and was well acquainted with the conditions of the boulders of granite in the pit in which he was working at the time of the injury resulting in his death, and the plaintiff's intestate was thoroughly acquainted with the work; and if he was, at the time of the accident resulting in his death, drilling or tampering with any old holes in which dynamite was placed, he well knew the fact at the time, and also well knew that he was violating a rule of the company forbidding monkey drillers to tamper with such holes, having received specific instructions as to these matters from the codefendant Julius Eller.
"Your petitioner specially avers that its codefendant Julius (346) Eller was not present when the accident occurred, resulting in the death of plaintiff's intestate, and had given him no order requiring him to do any dangerous work, and had given him no order to do any specific work within several days prior to said time. That the work which plaintiff's intestate was employed to do was not dangerous work, but was perfectly safe, and the said Julius Eller never at any time gave plaintiff's intestate any order to do dangerous work, or to drill in any boulder of granite containing dynamite or other explosive.
"Your petitioner further says that the plaintiff, W. F. Smith, administrator of John P. Smith, after the employment of the plaintiff's intestate as a monkey driller, gave his consent in writing to the employment of the said intestate as a monkey driller.
"Your petitioner further alleges that this codefendant Julius Eller is *Page 277 
utterly insolvent, as your petitioner is informed and believes. And your petitioner offers herewith a bond with good and sufficient surety for $500 for its entering into the District Court of the United States for the Western District of North Carolina, on the first day of the next session, a copy of the record in this action and for paying all costs that may be awarded by the said District Court, if said court shall hold that this action was wrongfully or improperly removed thereto. That your petitioner further prays this honorable court that it proceed no further herein except to make order required by law, and to accept the said surety and bond, and to cause the record herein to be removed into the said District Court of the United States in and for the Western District of North Carolina. And your petitioner will ever pray."
Affidavit of George R. Collins follows:
George R. Collins, being duly sworn, deposes and says: That the Harris Granite Quarries Company is a corporation duly and originally created, organized, and existing under and by virtue of the laws of the State of Maine. That it is one of the defendants in the above entitled civil action begun against it in the Superior Court of Rowan County; that the Harris Granite Quarries Company was at the time of the commencement of the action, and still is, a (347) citizen and resident of the State of Maine and a nonresident of the State of North Carolina; and the plaintiff W. F. Smith, administrator of John P. Smith, is and was at the time of the commencement of this action a citizen of the county of Rowan and the State of North Carolina, and the Western Federal District thereof. This deponent further says that he is the manager director of the said corporation, and has his office in the city of Salisbury, N.C. This deponent further says that the defendant C. L. Welsh is a citizen and resident of the State of North Carolina, county of Rowan, and was not at the time of the alleged accident and injury resulting in the death of the plaintiff's intestate, charged with duty of providing the plaintiff's intestate with reasonably safe premises and place to perform his duties and reasonably skilled and experienced foremen, superintendents, boss men, and fellow-servants, sufficient in number and diligence especially to look out after a blast alleged to have been made, and ascertain whether all the dynamite had been discharged before requiring or permitting the plaintiff's intestate to go where said alleged explosion had been attempted, or had actually taken place, and that he had no oversight, superintendence, or control of plaintiff's intestate. That he was not acquainted with the fact that plaintiff's intestate was working at the quarry at the time of the alleged injury resulting in death, as monkey driller, and that he did not employ the plaintiff's intestate.
GEORGE R. COLLINS. *Page 278 
Affidavit of C. L. Welsh:
C. L. Welsh, being duly sworn, deposes and says: That the Harris Granite Quarries Company is a corporation duly and originally created, organized, and existing under and by virtue of the laws of the State of Maine. That it is one of the defendants in the above entitled civil action begun against it in the Superior Court of Rowan County. That the Harris Granite Quarries Company was at the time of the commencement of the action and still is a citizen and resident of the State (348) of Maine, and a nonresident of the State of North Carolina; and the plaintiff, W. F. Smith, administrator of John P. Smith, is and was at the time of the commencement of this action a citizen of the county of Rowan and State of North Carolina, and the Western Federal District thereof.
This deponent further says that he is a citizen and resident of the State of North Carolina, county of Rowan, and is employed by the Harris Granite Quarries Company, but that he was not, at the time of the alleged accident and injury resulting in the death of the plaintiff's intestate, charged with the duty of providing the plaintiff's intestate with reasonably safe, suitable, and proper tools and appliances, and reasonably safe, suitable, and proper premises and places to perform his duties, and reasonably skilled and experienced foremen, superintendents, boss men, and fellow-servants, sufficient in number and diligence especially to look after a blast alleged to have been made, and ascertain whether all the dynamite had been discharged before requiring or permitting the plaintiff's intestate to go where said alleged explosion had been attempted, or had actually taken place, and that he had no oversight, superintendence, or control of plaintiff's intestate. That he was not acquainted with the fact that the plaintiff's intestate was working as a monkey driller at the quarry at the time of the alleged injury resulting in the death, and that he did not employ the plaintiff's intestate.
C. L. WELSH.
Affidavits of Julius Eller:
Julius Eller, being duly sworn, deposes and says: That the Harris Granite Quarries Company is a corporation duly and originally created, organized, and existing under and by virtue of the laws of the State of Maine. That it is one of the defendants in the above entitled civil action begun against it in the Superior Court of Rowan County. That the Harris Granite Quarries Company was at the time of the commencement of the action, and still is, a citizen and resident of the State of Maine, and a nonresident of the State of North Carolina; and the plaintiff, W. F. Smith, administrator of John P. Smith, is and *Page 279 
was at the time of the commencement of this action a citizen of (349) the county of Rowan and State of North Carolina, and the Western Federal District thereof. And this deponent further says that he is a resident of the county of Rowan, State of North Carolina, and that he is employed by the Harris Granite Quarries Company at the Balfour Pink Quarry near Granite Quarry, N.C. and that his position with that company is that of a foreman. That he has been in the employment of the Harris Granite Quarries Company and predecessors for about five years.
That this deponent was well acquainted with plaintiff's intestate, John P. Smith, and that the father of this deponent married the mother of the said John P. Smith, and that the said John P. Smith was living with the deponent's father at the time of the alleged injury, which resulted in the death of the said John P. Smith. The said John P. Smith was about 15 years old and well grown physically and mentally, and on or about 1 January, 1913, he solicited employment of this deponent as a tool carrier for the Balfour Quarry Company near Granite Quarry, N.C. and that such employment was given him. That among other things his duties required him to carry tools to the employees who were engaged in the business of monkey drilling and hand drilling, to furnish the said employees with the new drills when needed, and that as such tool carrier he became well acquainted with all the operations in connection with the business of the hand drillers or monkey drillers, and frequented the pits in which they worked and knew of the method and manner of handling said hand drills.
That on or about 20 June, 1913, the plaintiff's intestate, John P. Smith, came to this deponent and asked to be given the position of monkey driller, and stated that he was anxious to be promoted to this position, and that he knew all about the handling of a monkey drill. This deponent gave him the position of monkey driller, and at the time of his promotion, as was his custom, he gave to plaintiff's intestate specific instructions as to his duties, and pointedly instructed him that he was never to drill in any old holes that had been drilled in boulders or blasted granite, and that he was only to drill new (350) holes in rocks and boulders that never had been filled with dynamite or other explosive. That this deponent has knowledge of the fact that the Harris Granite Quarries Company keeps in its employment specially trained men whose business it is to inspect and clean out all old holes that have not been exploded, and that the plaintiff's intestate knew this fact, and knew that it was against the rules to work on any granite or rock or boulder until after the old holes had been thoroughly cleaned out and after inspection had been made. That the plaintiff's *Page 280 
intestate was well acquainted with the fact that the tools furnished for the purposes of cleaning out old holes were not made of metal, but were made of wood. This deponent further says that plaintiff's intestate was not engaged for the purpose of cleaning out old holes, or for the purpose of using the instrument to clean old holes, but was employed to use a monkey drill in drilling new holes in new boulders. This deponent further says that the handling of a hand drill or monkey drill by an employee in drilling new holes is an absolutely safe work, and simple in its nature and character.
This deponent further says that at the time of the said injury resulting in the death of the plaintiff's intestate that he was not present, and that he had given said plaintiff's intestate no orders or instructions to bore into any boulder containing old holes or unexploded dynamite, or to bore into any boulder which had turned over, and in which the dynamite had not exploded, but, on the contrary, at the time he was originally employed as a monkey driller, and frequently afterwards, he was instructed never to drill in any boulder or rock in which there were old holes.
This deponent further says that plaintiff's intestate had been working as monkey driller for about ten days and was thoroughly well acquainted with the condition of the boulders in the pit in which he was working at the time of the alleged injury which resulted in his death, and that the plaintiff's intestate knew that his duty was solely that of drilling new holes in new boulders in said pit; and that if the plaintiff's (351) intestate was drilling in any hole in which the dynamite was not exploded, he well knew the fact, and also well knew that he was violating the explicit orders of the deponent, and the rules of the Harris Granite Quarries Company.
J. A. ELLER.
On considering the facts stated in the petition and accompanying affidavits, the application for removal was denied, and defendant company, having duly excepted, appealed.
It is the approved position with us that actions of this character may be prosecuted as for a joint wrong, and authoritative decisions hold that when so stated in the complaint and made in good faith the allegations, "viewed as a legal proposition, must be considered and passed upon as the complaint presents them, and in such case no severable controversy is presented which requires or permits a removal to the Federal courts. R. R.v. Dowell, 229 U.S. 102; Ala., *Page 281 etc., R. R. v. Thompson, 200 U.S. 206; Hough v. R. R., 144 N.C. 701; and Tobacco Co. v. Tobacco Co., 144 N.C. 352. The petitioner recognizes that this is the principle obtaining here, and makes his application on the ground that there has been, in this instance, a fraudulent joinder of the resident defendants. On such petition filed, when the fraudulent joinder is sufficiently alleged, the case must be removed to the Federal Court, and if the plaintiff desires to traverse the jurisdictional facts, he must proceed in that tribunal.
But the cases referred to, and others of like import, are to the effect that a petition on that ground will not be allowed on allegations general in terms, that the resident defendant has been joined for the mere purpose of avoiding a removal or with no honest intent of seeking relief against such resident, or by general allegations of fraudulent joinder, however positive in terms. This question of fraud may not, as a rule, be raised by a simple averment, as in the case of diversity of citizenship, but there must be alleged usually a series of facts and circumstances indicating the fraudulent purpose, and the decisions of the (352) Supreme Court of the United States, as interpreted in this jurisdiction, require that in order to a valid petition of this character the facts and circumstances constituting the alleged fraud must be fully set forth with such definiteness as to show that there has been a fraudulent joinder. The position should appear as a conclusion of law from the facts stated. R. R. v. Dowell, supra; R. R. v. Willard, 220 U.S. 413;R. R. v. Shegogg, 215 U.S. 308; Lloyd v. R. R., 162 N.C. 485, andRea v. Mirror Co., 158 N.C. 24.
Speaking to this question in the recent case of Lloyd v. R. R., the Court said: "On this question the authorities are to the effect that when viewed as a legal proposition, the plaintiff is entitled to have his cause of action considered as he has presented it in his complaint (R. R. v.Miller, 217 U.S. 209; R. R. v. Thompson, 200 U.S. 206; Dougherty v. R.R., 126 Fed., 293); and while a case may in proper instances be removed on the ground of false and fraudulent allegations of jurisdictional facts, the right does not exist, nor is the question raised by general allegations of bad faith, but only when, in addition to the positive allegation of fraud, there is full and direct statement of the facts and circumstances of the transaction sufficient, if true, to demonstrate "that the adverse party is making a fraudulent attempt to impose upon the court and so deprive the applicant of his right of removal." Rea v. Mirror Co., 158 N.C. 24-27, and authorities cited, notably R. R. v. Herman, 187 U.S. 63; Foster v.Gas and Electric Co., 185 Fed., 979; Shane v. Electric R. R., 150 Fed., 801; Knutts v. Electric R. R., 148 Fed., 73; Thomas v. R. R., 147 Fed., 83; Hough v. R.R., 144 N.C. 701; Tobacco Co. v. *Page 282 Tobacco Co., 144 N.C. 352; R. R. v. Houchins, 121 Ky. 526; R. R. v.Gruzzle, 124 Ga. 735; and Huchill v. R. R., 72 Fed., 745.
True, it is now uniformly held that when a verified petition for removal is filed, accompanied by a proper bond, and same contains facts sufficient to require a removal under the law, the jurisdiction of the State court is at an end. And in such case it is not for the State (353) court to pass upon or decide the issues of fact so raised, but it may only consider and determine the sufficiency of the petition and the bond. Herrick v. R. R., 158 N.C. 307; Chesapeake v. McCabe,213 U.S. 207; Wecker v. Enameling Co., 204 U.S. 176, etc. But this position obtains only as to such issues of fact as control and determine the right of removal, and on an application for removal by reason of fraudulent joinder, such an issue is not presented by merely stating the facts of the occurrence showing a right to remove, even though accompanied by general averment of fraud or bad faith; but, as heretofore stated, there must be full and direct statement of facts sufficient, if true, to establish or demonstrate the fraudulent purpose.Hough v. R. R., 144 N.C. 692; Tobacco Co. v. Tobacco Co., 144 N.C. 352;Shane v. R. R., 150 Fed., 801. And referring to a former decision of the Court on the subject of Rea v. Mirror Co., the opinion in Lloyd'scase said further: "In Rea v. Mirror Co., supra, the principle was applied where plaintiff had sued a nonresident corporation, doing a manufacturing business in this State, to recover for physicial [physical] injuries suffered by the plaintiff and alleged to be by reason of some negligence of the company in the operation of its machinery, and a resident employee was joined as codefendant. The nonresident company in apt time filed its duly verified petition, accompanied by proper bond, setting forth the facts of the occurrence with great fullness of detail, charging a fraudulent joinder of the resident employee, and containing averment further, that "said employee was a member of the company's clerical force in the office of the company, having nothing whatever to do with the machinery or its management, and that he was not present in the factory at the time of the injury." The petition for removal was allowed, the Court being of opinion that, if these facts were established, it would make out the charge of fraudulent joinder and bring the case within the principle of Wecker v. Enameling Co., 204 U.S. 176."
Considering the petition in the light of these principles, we do not think that the issue as to fraudulent joinder of the two resident defendants has been sufficiently raised. True, there is a full and (354) positive allegation of such fraud in general terms, and petitioner in denying responsibility on the part of these defendants makes averment that they were not "personally charged with the duty of providing *Page 283 
plaintiff's intestate with reasonably safe, suitable, and proper tools and appliances and reasonably safe places and premises to perform his duties, reasonably skilled and experienced foremen, superintendents or boss men, and fellow-servants sufficient in number and diligence especially to look after blasts alleged to have been made and ascertain whether all dynamite had been discharged before requiring or permitting plaintiff's intestate to enter or go where such alleged explosion had been attempted or actually taken place," etc. These averments present the petitioner's legal conclusion arising from the position of these individual defendants rather than the positions held and the authority actually exercised by them. A corporation must necessarily act through its agents and employees, and if a nonresident company seeks a removal on the ground of fraudulent joinder, it should be required to show the facts of the occurrence and which of their agents had the control and management at the time; and if the employees sued had duties in reference to the company's work at the time and place where the injury occurred (which they evidently did, in such instance), these positions and duties should be stated so that the court, apprised of the facts, could draw its own conclusion as to their responsibility.
And while the petition, speaking more directly to the alleged connection of the defendant C. L. Welsh, alleges that "he was joined as a party defendant for the sole and only purpose of preventing removal," and that "he knew nothing of the employment of the intestate in the capacity of monkey driller at the time and places mentioned in the complaint, and was not present or in any wise connected with the alleged injury causing the death of plaintiff's intestate," and as to the defendant Eller, "that he was not present when the accident occurred, resulting in the death of plaintiff's intestate, and had given him no order requiring him to do dangerous work, and had given him no order to do any specific work within several days prior to said time, and "that said work was not dangerous, but perfectly safe," etc., we do not think that (355) either or both of these averments should be allowed to affect the result. It is not infrequently true that a general manager or an agent having general charge and active control of work employing large numbers of men does not know the name or present occupation of each individual employee, and yet he may be responsible for the methods pursued in conducting the work and the care required in the selection of competent workers. For aught that appears in this petition, defendant may have had such position here, and the authority as actually exercised by him may be fully sufficient to charge him with responsibility for intestate's death, though he may not have been personally present at the time and may not have known his name. And as to defendant *Page 284 
Eller, it appears both in the petition and accompanying affidavits that when the intestate was first employed as monkey driller, which was about ten days prior to his death, the said defendant had given him specific instructions as to the use of the monkey drill and as to all his duties connected with said employment, and especially warned him not to drill in any old holes, or in any rock or boulder of granite that had holes in it, or that were charged with dynamite or other explosive. It appears, therefore, by fair intendment from the facts stated in the petition itself that this defendant had some position in this work, giving him authority over the intestate, and was charged with some responsibility concerning him.
On careful persual [perusal] of the petition and accompanying affidavits, the Court is of opinion that they only present a general denial of liability, accompanied by general allegations of fraudulent joinder, etc., and that the traversable facts, as stated, are not sufficiently full and definite to raise the issue of fraudulent joinder within the meaning of the removal acts.
On the record, we hold that the ruling of his Honor is in accord with the decisions to which we have referred as controlling, and that his judgment denying the application must be
Affirmed.
Cited: Pruitt v. Power Co., 165 N.C. 418, 420; Cox v. R. R.,166 N.C. 659.
(356)