ALBERT D. JOHNSON v. JAMES I. ALLEN.

*Husband and Wife—Harboring Wife—Evidence—Leading Questions—Dockets of Justices, Quasi Records—Incompetent Evidence not objected to—Vindictive Damages—Evidence to impeach Verdict.*

1. In a suit by a husband, charging defendant with harboring and debauching plaintiff's wife, it was competent to ask the plaintiff, testifying in his own behalf, in reference to an action theretofore brought by the wife for divorce, " Do you know who was present (at the trial of that action) as the friend and adviser of your wife ? If yes, who was it ?"

2. It is for the Judge below to exercise a discretion, as to when the rule as to *leading questions* should be relaxed ; and it is only when his exercise of such discretion is clearly erroneous, and to the prejudice of the complaining party, that it constitutes ground for a new trial. It seems that the exercise of the discretion is not assignable as error.

3. To show relations between defendant and plaintiff's wife, it was competent to prove that, while she was living in a house belonging to defendant, he had her supplied with a sewing-machine and instructed in its use.

4. While the minutes of proceedings before a Justice of the Peace are a *quasi* record and evidence of what is properly entered upon them, it is competent to prove the conduct of a person at a trial, to show his relations with one of the parties.

5. Plaintiff having, at former term, issued a writ of *habeas corpus ad testificandum,* to his wife commanding her to produce the body of her young child at the trial ; *Held,* that the admission of the writ in evidence was proper, for the purpose of *showing* that plaintiff had endeavored to have witness and child present at the trial.

6. The admission of incompetent evidence, without objection, is assignable as error, only when the evidence is made incompetent by statute.

7. In actions for torts, where it is proper for the jury to give vindictive damages, it is competent to hear evidence of the pecuniary condition of the defendant.

8. Where the defendant wantonly enticed plaintiff's wife away from him, and harbored and debauched her, held to be a case for vindictive damages.

9. A stranger is justified in giving the wife of another continued shelter and protection, only when the husband treats her with such violence as to endanger her personal safety.

10. Evidence to impeach a verdict for the misconduct of a jury, must come from other sources than the jury itself.

CIVIL ACTION, tried before *Shepherd, J.,* at November Term, 1887, of the Superior Court of ORANGE.

The facts sufficiently appear in the opinion.

· *Mr. A. W. Graham,* for the plaintiff.
*Mr. J. W. Graham* and *Mr. W. W. Fuller,* for the defendant.

MERRIMON, J.   The purpose of this action is to recover damages from the defendant, for "enticing, harboring, and debauching the plaintiff's wife." On the trial, the plaintiff was examined as a witness in his own behalf. He testified as to his relations with his wife, and the interference of the defendant therewith, and further, "that his said wife sued him for a divorce, '*a mensa et thoro,*' the summons being dated July 10th, 1885, and the case came on for trial at March Term, 1886, of this Court, when the said wife, after testifying in her own behalf, submitted to a nonsuit. Plaintiff's counsel asked him the following question: 'On the trial of the action for divorce, brought against you by your wife, tried at March Term, 1886, do you know who was present as the friend and adviser of your wife? If yes, who was it?'

To this question, the defendant objected. Objection overruled. Defendant excepted."

The evidence elicited was competent, because it tended to show the relations between the wife and the defendant. The question was only slightly leading; it did not strongly sug-

gest the particular answer to be given by the witness, and, in view of all the evidence, the discretion exercised by the Court in allowing it, and the answer to it, ought not to be reviewed, although, perhaps, it had been better to have required the question to be put in a wholly unobjectionable shape.  Much must be left to the just discretion of the presiding Judge, in the conduct of the trial, including the examination of witnesses.  Particularly, in a case like this, he observes the course of the examination of the witness, and can better determine when the rule, as to leading questions, should be relaxed, and to what extent.  It is only when, the exercise of his discretion in such respect is clearly erroneous and to the predjudice of the party complaining, that of itself, it constitutes ground for a new trial.  Indeed, it seems that the exercise of the discretion of the Judge is not assignable as error.  *McCurry* v. *McCurry,* 82 N. C., 296; 1 Gf. Ev., § 435.

A witness for the plaintiff—a merchant—testified that, " defendant came to my store and asked the price of sewing machines.  I told him forty dollars.  He then selected one, and asked me to bring one like that he had picked out to that house, the house on the defendant's land, where the plaintiff's wife was.  He requested me to bring it myself, as the person he intended it for was in a delicate condition, and would rather that I would not send either of the young men.  When I got to the house, defendant was in the field near by, and came up and sat on the door-step.  I carried the machine in, and was explaining it to plaintiff's wife, when defendant asked her, ' Do you think you understand it ? '

Defendant objected to all testimony in regard to the sewing machine, before and after it was given.  Objection overruled.  Defendant excepted."

Obviously, this evidence was competent.  It tended, in connection with other evidence, to show the defendant's

illicit relations with the plaintiff's wife, and that he encouraged her to remain on his land away from her husband.

Another witness, for the plaintiff, testified as follows: "I was Deputy Sheriff and constable, and served a peace warrant on plaintiff, and took him to Rose Jones', on Col. Allen's land, for trial. Defendant was then acting for plaintiff's wife, at whose instance the warrant was issued, and was urging a trial, and objected to the removal of the case. Plaintiff swore that he would not get justice before Sharp, and the case was removed to W. T. Tate, another Justice of the Peace, in same township. Defendant objected to it, but it was never prosecuted further. Plaintiff's wife said she was not in a condition to go to the trial, if the case was removed.

Defendant objected to the above testimony. Objection overruled. Defendant excepted.

(Defendant had cross-examined plaintiff at length, and brought out the fact that he had been arrested on a peace warrant at the instance of his wife.)"

The objection to this evidence went upon the ground that the "record" of the Court of the Justice of the Peace was the only proper evidence as to what was done in respect to the warrant. The minutes of proceedings before Justices of the Peace are, for many purposes, treated as *quasi* records, and they are evidence of what is properly entered upon them. But the purpose of the evidence objected to, was not to prove anything on the minutes kept by the Justice of the Peace, but to prove the conduct of the defendant towards the plaintiff's wife, in her relations with her husband, and for this purpose, it was competent, and properly received.

It appears that "the plaintiff, in his rebutting testimony, after defendant had closed his testimony, offered in evidence a writ of *habeas corpus ad testificandum*, issued at last term of the Court, directed to plaintiff's wife, commanding her to

produce the body of her youngest child to give evidence in behalf of the plaintiff.

Defendant objected. Objection overruled, his Honor allowing it to be used only for the purpose of showing that plaintiff had endeavored to have witness and child present at the trial. Defendant excepted."

What evidence produced on the trial by the defendant led to the introduction, by the plaintiff, of the writ named, does not appear. It seems that it was suggested, in some connection, by the defendant, that the plaintiff had not been diligent in bringing the infant referred to before the Court, for some appropriate, or supposed appropriate purpose. The Court received the writ in evidence only for the purpose mentioned. For this purpose, it would, so far as we can see, be unobjectionable. In any view of it, it was of slight importance, and its admission in evidence is certainly not ground for a new trial. The burden was on the appellant to show its importance, its incompetency, and that it tended to prejudice him in some material respect.

It further appears, that " at the close of the testimony, before any argument, defendant moved to strike out all the evidence relating to defendant's pecuniary condition. The motion was denied, and defendant excepted.

This evidence was not objected to when offered."

Upon principle and authority, objections to the admission of evidence on the trial should be made in apt time, that is, when it is offered or received; the refusal of the Court to exclude it at a subsequent time, cannot be assigned as error, except in cases where the evidence received is made incompetent by some statutory provision. Parties in the conduct of the trial must be circumspect and careful—it is serious— each step in it is important, and carelessness cannot be indulged. To allow evidence to be brought out at one time on the trial, and excluded at a subsequent one, might work injustice to the party introducing it—give rise to delay

and confusion, and encourage a looseness of practice that would certainly interfere more or less with the orderly and intelligent conduct of trials. If, sometimes, the omission to object at the proper time was occasioned by inadvertence or mistake in some way, the presiding Judge might grant a motion to exclude the objectionable evidence, or allow the objection to be entered as of the proper time, but the exercise of his discretion would not be reviewable here. *State* v. *Ballard*, 79 N. C., 627 ; *State* v. *Efler*, 85 N. C., 585 ; *State* v. *Pratt*, 88 N. C., 639. Moreover, as we shall presently see, the evidence which the appellant sought to exclude was competent.

The case settled on appeal states that the plaintiff requested the Court to instruct the jury :

" 1. That if they believed the defendant used his wealth and social position to entice the plaintiff's wife away from him, and to induce her to remain, they may give vindictive damages.

This instruction was given.

2. That defendant, not being the parent of plaintiff's wife, had no right to harbor her after being forbidden.

This instruction was given, with this modification : " This is true, unless he shows he harbors her simply to protect the wife from the violence of the husband ; and, as to this, the burden is on the defendant to show. If he has harbored her after being forbidden, you will find this issue for plaintiff, unless you find it was unsafe, by reason of violence, for her to return."

The Court further instructed the jury :

"That if defendant aided plaintiff's wife in procuring a divorce, by employing counsel for her, and in advising and encouraging her, they might consider this as some evidence of his harboring her, when taken in connection with the other circumstances of the case.

He further instructed them, that punitive or vindictive

damages are addressed to the sound discretion of the jury, and if, from all the circumstances of the case, they are satisfied the injury was wanton and wrongful, they may award such damages."

The defendant, among other special instructions asked for, requested the Court to give the following, which it gave, as stated below:

" 2. So, if a wife is kept by the defendant from a principle of humanity, to secure her from the ill-treatment of her husband, an action will not lie, even after notice.

This was given, with the following modification : " Provided, the ill-treatment is of such a cruel character as to force the wife to leave, and it is not.safe for her, by reason of her husband's violence, to return to him ; and as to this, the burden of proof is on the defendant."

The defendant insists, that the Court erred in instructing the jury, in substance, that they might give the plaintiff vindictive or punitive damages, if the defendant used his wealth and social position to entice the plaintiff's wife away from him, and so remain, and they might give such damages in their sound discretion, if they were satisfied, from all the evidence, that the injury done to the plaintiff was wanton and wrongful.

The evidence, in some aspects of it, tended, strongly, to prove that the defendant was a man of considerable wealth; that he had strong influence over the plaintiff's wife; that she occupied a house on his farm, near to his dwelling-house, with his permission; that he was often seen about her— sometimes in the house with her, having the door closed; that he let her have articles, such as she needed; that he encouraged and helped her in opposition to her husband, and the like. We do not deem it necessary to recapitulate the evidence, more at large, here. It is sufficient to say, that, while it was, to some extent, conflicting, there was much of it that strongly warranted the instruction given as above

stated, and it was for the jury to take such views of, and give it such weight and application, as they might deem just, subject to the power of the Court to set their verdict aside for just cause.

The instructions complained of, now under consideration, were substantially correct. It is well settled, in this State, that for tortious injuries, juries are not confined, in ascertaining the damages to such as are merely compensation for the actual injury sustained; they may go further, and give exemplary, vindictive and punitive damages, the amount to depend upon the character of the parties—the nature of the injury complained of—its circumstances of aggravation and outrage towards the injured party—the pecuniary circumstances of the defendant, and the like considerations.

In *Gilreath* v. *Allen*, 10 Ired., 67, this Court says: "In actions of *tort*, where there are circumstances of aggravation, juries are not restricted, in the measure of damages, to a mere compensation for the injury actually sustained, but may, in *their discretion*, increase the amount according to the degree of malice by which the evidence shows the defendant was actuated, the extent of the injury intended, and not that which was really inflicted. Accordingly, juries are told, in many cases, they may give exemplary damages, that is, such as will make an example of the defendant, or vindictive damages, or smart money, terms which explain themselves. * * * Injuries sustained by a personal insult, or attempt to destroy character, are matters which cannot be regulated by dollars and cents. It is fortunate, that, while juries endeavor to give ample compensation for the injury actually sustained, they are allowed such full discretion, as to make verdicts to deter others from flagrant violations of social duty. Otherwise, there would be many injuries without adequate remedy." To the like effect are *Howell* v. *Howell*, 10 Ired., 84; *McAulay* v. *Birkhead*, 13 Ired., 28; *Bradley* v. *Morris*, Busb., 395; *Smithwick* v. *Ward*, 7 Jones, 64; *Reeves*

v. *Winn*, 97 N. C., 246. And these cases, and that of *Adcock* v. *Marsh*, 8 Ired., 360, likewise decide, that, in such cases, it is competent to give evidence of the pecuniary circumstances of the defendant, with the view to enhance the measure of the damages.

There can be no question, that the rule of law, thus settled in this State, is applicable to the present, and like cases. The jury have found, by their verdict, that the defendant enticed plaintiff's wife away from him; that he harbored and debauched her; that he did this "wrongfully and wantonly"! What greater tortious injury—deeply humiliating and afflicting in its nature—could be done to a man? And for what injury should the guilty party pay more dearly in exemplary damages, in the absence of mitigating circumstances?

The defendant complains here, that the Court below failed to direct the attention of the jury, particularly, to evidence tending to prove that the plaintiff and his wife did not live harmoniously together, before their separation; that he maltreated her; that she was not a pure woman, and the like; and to give them proper instructions as to this part of the evidence. But it does not appear from the record, that the Court did not give such instructions, nor does it appear that it was requested to give them, and refused to do so; and, moreover, there is no assignment of error in that respect.

This Court can only consider and act upon errors assigned. Besides, where, as in this case, the Court gives instructions applicable to the facts, and gives, or refuses to give, special instructions asked for by the parties, it cannot be assigned as error, that it failed to present to the jury a possible view of the facts that might have been of advantage to the complaining party. *Burton* v. *The Railroad Company*, 82 N. C., 504; *King* v. *Blackwell*, 96 N. C., 322; *Railroad Company* v. *McCaskill*, 98 N. C., 526.

The Court properly declined to give the special instructions asked for by the defendant.

" Ill-treatment," is not a definite expression; but mere ill-treatment of the wife did not warrant the defendant in entertaining her, thus keeping and encouraging her to stay away and apart from her husband. The purpose and policy of the law are, that husband and wife shall live harmoniously together, and, if need be, that each shall endure the shortcomings of the other. They may not separate, because of slight, or even serious, differences and disagreements, and mere ill-treatment of one towards the other; and it is only when the husband treats his wife with violence—endangers her personal safety—that a stranger shall be justified in giving her continued shelter, support and protection against the husband's will. Otherwise, the strength and permanency of the marriage relation would be impaired, to the great detriment of family ties, and the good order and well-being of society.

We think, also, that the Court properly told the jury that the burden of proving the alleged cruel conduct of the plaintiff towards his wife, was upon the defendant. Generally, a man shall not entertain and keep a wife away from her husband against his will; if he shall do so, and the husband shall bring his action against him for that cause, and he shall rely upon the defence, that the plaintiff was violent towards his wife, and endangered her safety, so that she was forced to flee from him, he must plead and prove his defence. The plaintiff need not allege, in his complaint, that he was not violent towards his wife, and did not imperil her safety, while she lived with him in his house, and he is not bound to prove an allegation he is not required to make in the complaint.

The defendant moved for a new trial, assigning, among other grounds for it, that of the alleged misconduct of the jury in settling the *quantum* of damages allowed the plain-

tiff. The evidence relied upon to support the motion, in this respect, consisted of affidavits, stating what one or more of the jurors had said, in the presence of the affiants, as to how the jury had conducted their proceedings in ascertaining the damages. To allow the motion, founded upon such evidence, would be virtually to allow jurors to impeach their own verdict. It is settled, as the Court properly held, that this cannot be allowed. Evidence to impeach the verdict of the jury, must come from sources other than the jurors themselves. Otherwise, motions for a new trial would frequently be made, based upon incautious remarks of jurors, or declarations by them, procured to be made by the losing party, or some person in his interest, and thus the usefulness and integrity of trial by jury would be impaired. Moreover, controversies thus arising would lead to unseemly confusion. *State* v. *Tilghman*, 11 Ired., 513; *State* v. *Smallwood*, 78 N. C., 560; *State* v. *Brittain*, 89 N. C., 481; *State* v. *Royal*, 90 N. C., 755.

The Court did not decide that it did not have authority to set aside the verdict and grant a new trial, because of misconduct of the jury; it simply held that the evidence relied upon to support the motion was not competent, and in this it was correct.

Judgment affirmed.