ISAIAH JENKINS v. W. J. LONG ET AL., TRADING AS SULLIVAN, LONG & HAGERTY, ET AL.

**1. Master and Servant—Instructions—Safe Place to Work—Evidence—Jury —Presumptive Knowledge.**

Where damages are sought in an action for the negligent caving in of a ditch 8 feet deep by 2½ feet wide, in which the plaintiff, defendant's employee, was at work at the time, by reason of not having left bulk-heads to protect the plaintiff, testimony that a shallow ditch would not require bulkheads or bracing, but if deep enough to reach a man's head in rotten ground or liable to cave it would require them for safety, does not constitute reversible error as an expression of opinion, for men of ordinary intelligence are presumed to know this without testimony thereof.

**2. Master and Servant—Negligence—Safe Place to Work—Evidence—Notice of Danger.**

Where negligence alleged in an action for damages is the failure of the defendant to have provided bulkheads or braces in a ditch where his employee, the plaintiff, was required to work, and in consequence the ditch caved in and injured him, testimony of a witness that he told the defendant's superintendent in charge of the work on the day of the injury, but before its occurrence, that the ditch was dangerous without the bulkheads, is competent as fixing the defendant with previous knowl-edge of the existing danger.

**3. Appeal and Error—Objections and Exceptions—Unanswered Questions.**

The Supreme Court on appeal will not consider error assigned for the ruling out of unanswered questions, unless it appears in some recognized manner what the answers would have been, or shown that the appellant had been prejudiced thereby.

**4. Same—Evidence—Matters at Issue.**

Where damages are sought for injury to an employee by the caving in of a ditch where he was at work, and there is evidence that the depth at which he was digging would require bulkheads for safety in soil of a certain character, an unanswered rejected question assuming the charac-ter of the soil will not be considered as error on appeal, as the question assumed a matter for the determination of the jury.

**5. Master and Servant—Negligence—Safe Place to Work—Instructions— Appeal and Error—Harmless Error.**

Where an employer is sued for his negligence in failing to provide his employee a safe place to work in digging a ditch, the alleged negligence being the failure to have bulkheads in the ditch to prevent the falling in of the dirt that caused the injury complained of, a charge of the court that it was the duty of the employer "to see that the place is kept safe," while erroneous, is held as harmless error when, interpreting the relevant portions ·of the charge in connection therewith, it appears that he charged the jury that it was the employer's duty to provide a reasonably safe place to work and to exercise reasonable care to see that the place was kept safe, etc.

APPEAL by defendants from *Lane, J.,* at March Term, 1915, of MECK-LENBURG.

Action to recover damages on account of injuries alleged to have been sustained in the construction of a ditch or trench by reason of the negligence of the defendants. The plaintiff was employed by Sullivan, Long & Hagerty, partners, who are defendants, who were under contract with the city of Charlotte, also a defendant, in the construction of sewer ditches. The contract between the defendants is not material, as no question is raised of the relation between the defendants, nor is it contended that the doctrine of independent contractor arises.

The negligence alleged is that the soil through which the ditch or trench was being dug was rotten and unsafe, and that the defendants failed to leave bulkheads in the ditch and failed to brace it.

The plaintiff was injured by the caving in of the ditch. The ditch was about eight feet deep and two and one-half feet wide at the time of the injury.

The plaintiff introduced evidence tending to sustain the allegations of negligence, and the plaintiff introduced evidence to the contrary. There was evidence on each side as to the custom of leaving bulkheads and of bracing ditches of the depth and character of the one where the plaintiff was working. There are several exceptions to the evidence and one exception to the charge which will be noted in the opinion. There was a verdict and judgment for the plaintiff and the defendants excepted and appealed.

*McNinch & Justice for plaintiff.*
*Brenizer, Black & Taylor and Cansler & Cansler for defendants.*

ALLEN, J. Robert Moser, witness for the plaintiff, was asked, "What is the custom with reference to bracing the sides of a ditch or leaving bulkheads where it appeared to be dangerous either from the depth of the ditch or the character of the earth?" and he replied: "The custom, the necessity of bracing or leaving bulkheads, depends altogether upon the depth of the ditch. If it is a shallow ditch it does not need bulkheads or bracing, but if it is deep enough to reach up to a man's head,

it makes it necessary either to leave bulkheads or bracings, if the ground through which the ditch runs is anything like rotten or liable to cave." The defendants excepted.

The answer to this question, if otherwise objectionable, is harmless, because there is nothing in it which a man of ordinary intelligence would not know without testimony. It amounts to saying that in a shallow ditch you do not need bracing, but if the ditch is deep and through ground that is liable to cave, you do.

Again, this witness, on cross-examination, answered the question which was asked him on direct examination and which is objected to, more positively in favor of the plaintiff. He said: "Without exception, where you are digging a ditch of the depth of eight feet and two and one-half feet wide through hard, solid clay it is necessary to leave bulkheads in it or brace it up. It is a custom with most men to leave bulkheads or brace through whatever sort of soil you may dig, if the ditch is eight feet deep and two and one-half feet wide."

2. Mr. Wilson who was the superintendent in charge of the construction of the sewers and a witness for the plaintiff, was asked, "Did you say anything to Mr. Wilson about bracing that ditch at any time that day?" and he replied: "I told him when he was up there when I got pretty low down in the ground that it looked pretty dangerous, and I thought there ought to be some bulkheads left." The defendants excepted.

This conversation occurred on the day of the injury and prior thereto, and it was competent for the purpose of showing that the attention of the defendants was called to the condition of the ditch and of the necessity of using some precautions to render the place where the plaintiff was working reasonably safe.

3. A witness for the defendants testified that he went to the home of the plaintiff on Monday after the injury and did not see the plaintiff, did see his wife, and he was asked, "Did you ask where he was?" The witness was not permitted to answer this question, and the defendants excepted.

There is nothing on the record to show what would have been the answer of the witness nor what was expected to be proved, and we cannot see that the defendants have been prejudiced by the ruling of the court. It may be that the witness did not ask where the plaintiff was, or, if he did, that the person of whom the inquiry was made did not know, or, if she knew, that she would not tell him, or, if she told him, that the answer would not be prejudicial to the cause of the plaintiff. An appellant is required to show error, and in order to get the benefit of evidence excluded it must reasonably appear what it is intended to prove and that the exclusion of the evidence is prejudicial.

4. A witness for the defendants was asked "To state whether or not

Johnson and Williams, digging a ditch of the depth of eight feet and of the width of two and one-half feet in light red clay soil similar to this where Isaiah was excavating, either braced the ditch or left bulkheads in it." The witness was not permitted to answer this question, and the defendants excepted. The record does not show what would have been the answer of the witness to the question, and the exception may be disposed of on the same ground as the preceding one. The question itself is also objectionable because it assumes that the plaintiff was working in light red clay soil, when that was one of the very matters in dispute between the parties.

5. The defendants excepted to the following part of the charge to the jury: "So the court charges the jury that in employing servants to work in ditches, the duty is upon the master, as in all cases of employment, to use reasonable care to see that his servant has a reasonably safe place to do the work which he assigns to him, and to see that the place is kept safe so long as the servant is required to stay therein."

The exception is to the latter part of the charge, where the court says that it is the duty of the employer "to see that the place is kept safe," and this would be objectionable if it stood alone, as the employer is not the insurer of the safety of the employee and is only required to exercise ordinary care to provide a safe place to work; but we must consider the charge as a whole, and when this is done it is free from objection. Reasonable care qualifies both duties which are imposed upon the employer.

His Honor told the jury that the employer must exercise reasonable care to see that the employee has a reasonably safe place to do the work and reasonable care to see that the place is kept safe; and he did not stop here.

He charged the jury further: "An employer is not required to provide an absolutely safe place for his employee to work in. He is not an insurer of the safety of an employee, but, as I have already stated, the duty is upon him to use ordinary care to provide a reasonably safe place in which the employee shall do his work."

And, again, after charging the jury upon the findings which would justify a verdict for the plaintiff, and stating the contentions of the defendants that they had provided for the plaintiff a reasonably safe place in which to work, and while it did not turn out to be a safe place, as the slide occurred, that it was something that could not be foreseen or foretold by them in the exercise of ordinary care. He said: "If you do so find that there was no failure on their part to exercise ordinary care to provide him a reasonably safe place in which to work, then you will answer the issue 'No,' for there would be no negligence."

We have carefully examined the record and find

No error.