BROWN, J., dissenting.
This action was brought to recover damages for personal injuries alleged to have been caused by the joint negligence of the defendants.
Plaintiff alleged that on 1 August, 1913, he was employed by the defendant company to load the cars of the C. C. and O. Railway Company with telephone poles 50 feet in length and from 18 inches to 2 feet in diameter at one end and 6 to 10 inches at the other. That the bark had been peeled from the poles, and they were not only very heavy, but "hard to handle with hand-power only." That it would require a dozen men to load the cars with safety, and that the poles are sometimes crooked, which makes them unwieldly and difficult to lift and place in (717) their proper position without as many as fifteen or twenty men to do the work.
Plaintiff further alleges: "That he was assigned by the defendant Telephone and Telegraph Company, through its foreman and vice-principal, the said J. C. Hollifield, to the work of loading upon cars telephone poles 50 feet long, of the character and kind hereinbefore described, with four other men and said foreman, who at times assisted in the work, and that plaintiff and the four other men with whom he was assigned to work were obliged, with the assistance of said foreman at *Page 771 
times, to load the poles upon cars, and to place the poles in position by moving them about and rolling them over upon the cars, and that such number of men was insufficient, and that the defendant company knew, and that the defendant J. C. Hollifield knew, or that each of them ought to have known, that such number of men was insufficient to handle, load, and place the poles as required by the defendant; and that with such knowledge the defendant company and the defendant J. C. Hollifield negligently, and with reckless indifference to the safety of those engaged in the work, assigned plaintiff, with such insufficient number of men, to the work of loading said poles, and in so assigning him to work with such insufficient number of men in the loading and handling of said poles negligently failed to provide for plaintiff a reasonably safe place and reasonably safe surroundings and conditions under which to do the work so assigned to him. That while plaintiff, who had no previous experience at such work, and who had no warning whatsoever from the defendants, or either of them, as to the dangers of the work, on the first day of his employment was assisting, to the best of his skill and ability, in the loading and placing of said poles, that he was negligently ordered and required by the defendant J. C. Hollifield — who had charge of and was directing and superintending the work for the defendant Telephone and Telegraph Company, clothed with the power and authority conferred upon him by said company to employ and discharge laborers who declined or omitted to obey the orders and perform the work required of them — and was therefore ordered and required by the defendant company, to cross over the pole, after it had been rolled upon a flat-car, and hold against the end of the pole while the other men, under the orders and requirements of the said J. C. Hollifield as foreman, engaged in an effort to roll the pole over in the direction in which plaintiff was standing, to place the same in position with other poles which had been loaded, plaintiff being so required to hold against said pole to prevent the end which he was attempting to hold from going beyond the point, alongside the other poles, to which said foreman desired to have it placed; that said pole was very heavy and was very crooked and so hard to handle by the few men engaged in handling it that it was almost impossible with the utmost exertion which the men could possibly employ, (718) and with great and unreasonable strain upon their part, to roll it over and move it, and that it was impossible for the men who were required to handle this pole to properly handle and so control it as to regulate its movements with any reasonable degree of safety to the men engaged in an effort to handle and move it; that while plaintiff was so engaged by the negligent requirement of the defendants, and each of them, in holding against one end of said pole, that the other men with great effort and exertion succeeded in lifting and rolling up the crooked *Page 772 
part of said pole from the floor of the car in order to roll the pole over, and the heavy crooked part of the pole, which was raised up some 2 or 3 feet from the floor of the car, suddenly and with great force fell over upon the floor of the car in the direction of and against plaintiff and the tool with which he was working, and violently struck him and hurled him off and beyond the car against a pile of logs and timbers upon the ground and injured him, as hereinafter alleged."
The telephone company filed a petition for removal of the case to the United States District Court upon the ground that it is a nonresident of this State and that J. C. Hollifield was fraudulently joined with it as a defendant for the purpose of preventing a removal to said court, and, further, that the complaint does not allege any joint cause of action against the defendants, but presents a separable controversy as to the telephone company which entitled it to the removal. The petitioner further alleged that the duty of furnishing a safe place for the plaintiff to work and a sufficient number of hands to assist the plaintiff was not such as defendants owed jointly to him, but that it was the sole duty of the petitioner.
Petitioner further alleged. "That the only negligence alleged in said complaint is the negligence of your petitioner in failing to furnish to the plaintiff a sufficient number of men to perform the work in which plaintiff was engaged, in failing to furnish to the plaintiff a reasonably safe and suitable place in which to work, and in failing to warn the plaintiff of the dangers to which he might be exposed while performing this work; that if these duties were owed to the plaintiff, they were not owed by your petitioner's servants or foremen; that it was no part of the duty of the said J. C. Hollifield to furnish the plaintiff with a safe and suitable place in which to do his work, or to warn the plaintiff of any danger to which he might be subjected while performing said work, and it does not appear from said complaint that the said J. C. Hollifield failed or neglected to perform any duty or duties which he owed to the plaintiff, which failure proximately caused the plaintiff's injury, and your petitioner expressly avers that the said J. C. Hollifield did (719) not fail or neglect to perform any duty or duties which he owed to the plaintiff, and petitioner expressly denies that the plaintiff's injury, if any he sustained, was proximately caused by any negligence or failure of duty on the part of the said J. C. Hollifield; that the said J. C. Hollifield was simply the boss of the gang of men in which the plaintiff was working, and as such boss assisted the plaintiff and the other employees in loading said poles, and was working with the plaintiff, assisting him, at the time the plaintiff alleges he was injured, and was, as your petitioner is advised and believes, a fellow-servant of the plaintiff, for whose negligence your petitioner was not and cannot be held *Page 773 
responsible; and your petitioner avers that if the plaintiff was injured by the turning of the pole, as alleged in the complaint filed in this cause, the turning of said pole was not the result of any act on the part of the said J. C. Hollifield, as the said J. C. Hollifield was not at that time engaged in turning said pole, but was simply assisting the plaintiff in holding same."
Petitioner also alleges that the defendant J. C. Hollifield has not employed counsel to defend him; that he is a son of plaintiff and is insolvent, and that plaintiff has no intention of prosecuting this suit against defendant Hollifield, and that the allegations against him were made for the sole purpose of preventing a removal of the case to the Federal court and in pursuance of a conspiracy between plaintiff and his son for that purpose.
The court refused to remove the case, and the telephone company excepted.
At the trial of the case before a jury a verdict was rendered for the plaintiff as follows:
1. Was the plaintiff injured by the negligence of the defendant Southern Bell Telephone and Telegraph Company, as alleged in the complaint? Answer: "Yes."
2. Did the plaintiff by his own negligence contribute to his injury, as alleged in the answer? Answer: "No."
3. Did the plaintiff assume the risk of injury, as alleged in the answer? Answer: "No."
4. What damage, if any, has the plaintiff sustained? Answer: "$5,000."
Judgment was entered upon the verdict against both defendants, and the telephone company, having noted its exceptions, appealed to this Court.
We have uniformly decided (720) in this Court that when a verified petition which contains facts sufficient under the law to entitle the applicant to a removal is filed and is accompanied by a proper bond, the jurisdiction of the State court is at an end, and that the issues of fact, if properly raised by the petition and papers in the cause, are to be tried and determined by the Federal court and not by the State court in which the action was brought. Herrick v. R. R., 158 N.C. 307; Lloyd v. R. R., 162 N.C. 485;R. R. v. McCabe, 213 U.S. 207; Wecker v. National EnamelingCo., 204 U.S. 176. But before the State court is under any duty or *Page 774 
obligation to surrender its jurisdiction it must appear affirmatively, and by specific allegation of the facts constituting the alleged illegal or fraudulent joinder of a resident with a nonresident defendant, that the same exists, and it is not sufficient to charge generally or by indefinite averments that the joinder is or was intended to be in fraud and prevention of the nonresident's right of removal. Hough v. R. R., 144 N.C. 692;Tobacco Co. v. Tobacco Co., 144 N.C. 352; Shane v. R. R., 150 Fed., 801.
The plaintiff is entitled to have his cause of action considered as stated in his complaint. If there has been a joint tort committed, he may sue the wrong-doers jointly or separately, at his election, as they are liable to him in either form of action. Hough v. R. R., supra; Smith v.Quarries Co., 164 N.C. 338; R. R. v. Miller, 217 U.S. 209; R. R. v.Thompson, 200 U.S. 206. When a party is in the lawful assertion of a right in bringing his action, the law attaches no importance to his motive in pursuing a course which he has a right to take. Hough v. R. R., supra. It was said in R. R. v. Dixon, 179 U.S. at p. 135: "The question to be determined is whether the Court of Appeals erred in affirming the action of the (State) Circuit Court in denying the application to remove; and that depends on whether a separable controversy appeared on the face of plaintiff's petition or declaration. If the liability of defendants, as set forth in that pleading, was joint, and the cause of action entire, then the controversy was not separable as matter of law, and plaintiff's purpose in joining Chalkley and Sidles was immaterial. The petition for removal did not charge fraud in that regard or set up any facts and circumstances indicative thereof, and plaintiff's motive in the performance of a lawful act was not open to inquiry."
Nor does the fact of the resident defendant's insolvency make any difference. It is not the amount that may be recovered eventually, but the right to sue him, that is the material question involved. Hough v. R. R.,supra. And the mere allegation of a conspiracy to prevent a removal is of no more consequence without the statement of matter which (721) shows that one existed to do a wrong. The right to removal then turns upon the allegation of sufficient facts upon which to predicate it. "While a case may in proper instances be removed on the ground of false and fraudulent allegations of jurisdictional facts, the right does not exist, nor is the question raised by general allegations of bad faith, but only when, in addition to the positive allegation of fraud, there is full and direct statement of the facts and circumstances of the transaction sufficient, if true, to demonstrate that the adverse party is making a fraudulent attempt to impose upon the court and so deprive the applicant of his right of removal." Smith v. Quarries Co., 164 N.C. 338,352, citing Rea v. Mirror Co., 158 N.C. 24; K. C. R. R. Co. v. Herman, *Page 775 187 U.S. 63; and numerous other cases. The State court does not hear the proof of the fraud and pass upon the issue, as that is left for the other court to do; but this rule applies only "as to such issues of fact as control and determine the right of removal, and on an application for removal by reason of fraudulent joinder, such an issue is not presented by merely stating the facts of the occurrence showing a right to remove, even though accompanied by general averment of fraud or bad faith; but, as heretofore stated, there must be full and direct statement of facts sufficient, if true, to establish or demonstrate the fraudulent purpose."Smith v. Quarries Co., supra.
The defendant company relied upon Rea v. Mirror Co., supra, andWecker v. National Enameling Co., supra; but it will be found upon an examination of those cases that there were direct, positive, and specific statements in the petitions to the effect that the resident defendants had nothing to do with the alleged wrongs, and were not even present when they were committed, but were employed in another department of the business not related in any way to the work in which the plaintiffs were engaged, and the facts were fully set forth so that it could be seen that there was a fraudulent joinder. But in this case the plaintiff has alleged in his complaint that J. C. Hollifield was superintendent of the work in which plaintiff was employed at the time he was injured, had general charge and control of it, and was clothed with authority to employ and discharge the plaintiff, and the other hands, for disobedience of his orders, and generally represented his principal, the telephone company, in this respect, and that, holding this position in the service of the company, he directed the plaintiff, who was inexperienced, to perform work which J. C. Hollifield knew to be dangerous, and without proper warning of the danger to his subordinates, or proper instructions to them as to how to do the work with safety. This allegation is not directly controverted or categorically denied, but the petitioner merely avers that Hollifield was a boss of the gang of hands to which plaintiff belonged, and was assisting him and his coemployees at the time of his injury, and that it is advised and believes that Hollifield was their (722) fellow-servant, and that the duty to furnish a sufficient force to load the cars with the poles was one owing by the petitioner only, and not by J. C. Hollifield, and that the latter did not fail to perform any duty owing by him to the plaintiff which proximately caused the injury. This is not an adequate denial of Hollifield's authority over the gang of workmen, nor is it any sufficient statement of facts showing a case of fraudulent joinder. It would seem to be more an expression of petitioner's opinion as to the nature of the transaction and of inferences it has drawn from undisclosed facts, or from the advice of counsel, rather than a plain and direct statement of relevant facts which are indicative of fraud. *Page 776 
This case, therefore, is not like Rea v. Mirror Co., supra, or Wecker v.National Enameling Co., supra, but is very much like Smith v. Quarries Co.,supra, except that the allegation of the petition for removal, which was denied, was far more specific, as to the authority of Welsh and Eller and the plaintiff, in that case, and also as to their duties and powers as employees of the nonresident defendant, than is the corresponding allegation in this case. The petition in Smith's case was very elaborate in its statements, and charged everything to be found in this petition, and contained far more relevant and material facts, and yet it was held to be insufficient to warrant a removal.
We might well rest our conclusion upon that decision without further discussion. But it is suggested that the plaintiff has not pursued his action against the resident defendant to final judgment. This is a clear error, as the record shows. He failed to plead, and judgment by default was entered against him, which established as against him, under our procedure, and procedure generally, the cause of action alleged in the complaint. Blow v. Joyner, 156 N.C. 140; Graves v. Cameron,161 N.C. 549; Patrick v. Dunn, 162 N.C. 19; Plumbing Co. v. Hotel Co.,168 N.C. 577. It was not necessary to submit an issue as to his negligence, when he admitted it by failing to answer. Justice Brown well says in Plumbing Co. v. Hotel Co., supra: "The default is an admission of every material and traversable allegation of the declaration or complaint necessary to the plaintiff's cause of action. 23 Cyc., 752. It admits all the material averments properly set forth in the complaint, and of course everything essential to establish the right of the plaintiff to recover. Any testimony, therefore, tending to prove that no right of action existed, or denying the cause of action, is irrelevant and inadmissible," citing Garrard v. Dollar, 49 N.C. 176; Lee v. Knapp,90 N.C. 171; Blow v. Joyner, supra; Graves v. Cameron, supra. This being so, the only thing left to do in regard to the resident defendant was the assessment of damages, after ascertaining the negligence (723) of the other defendant. This was done, as the record shows, and a final judgment was then entered against both defendants for the amount of damages, and costs. The language of the judgment is "that plaintiff have and recover judgment against the defendants in the sum of $5,000 and for the costs." The remark attributed to counsel was explained, and the record stands as we have stated it to be.
We have sufficiently considered Rea v. Mirror Co., 158 N.C. 25, which was much relied on by the defendant, and shown that it is like Wecker v.Enameling Co., 204 U.S. 176, in the respect that in both cases the servant injured and the one sued were in different branches of the service, and admittedly so; but in Smith v. Quarries Co., 164 N.C. 338, both servants were engaged in the same employment, as is *Page 777 
the case here, and we cannot well remove this suit without seriously impairing that case as an authority, if not overruling it, and we think it was correctly decided and is well supported by authorities in the Federal and State courts. We said in Hough v. R. R., 144 N.C. at 700: "The defendant, who petitioned for a removal, simply controverts the allegation of the complaint, for that is what the petition means, and all that it means. Its vituperative expressions prove nothing. Calling an act fraudulent does not make it so. It must be alleged in what the fraud consists. We have practically nothing before us but the joinder and the bare allegations of fraud. That will not do." What was said in that case as to proof of the fraud referred, of course, to such proof in the Federal court, where the issue of fraud is tried, if properly made in the State court. The Hough case is a direct authority in support of the right to join the defendants in this action. In respect to this right of joinder we find the following clear statement of law in 1 Mechem on Agency (2 Ed.), sec. 1460: "In practically every case in which the master could be held liable for the negligence of his servant, the servant himself is personally liable. This must be so from the very nature of the case. The whole theory of the master's liability is that the servant has done a legal wrong for which the law imposes a liability upon the master, however innocent he may be. The person actually and primarily at fault, however, is the servant, and if he would not be liable, the master ordinarily cannot be. The liability of the servant is the direct and primary one; that of the master is a secondary and imputed one. In actual practice the liability of the servant or agent is usually ignored because it is more convenient or effective to pursue the master; but the servant's liability nevertheless exists." The Court expressed a doubt in Dishon v.R. R., 133 Fed. Rep., 471, which was afterwards resolved against its view in R. R. v. Thompson, 200 U.S. 206, to which it had referred for a solution of the question in doubt, as the writ of error was then pending. (724)
Coming to the exceptions taken at the trial before the jury, we find several questions of evidence presented. Some of the questions put to witnesses were unanswered, and, therefore, harmless. There is nothing to show what the answer would have been, nor what was expected to be proved, and we cannot see that the appellant was in any way prejudiced by the ruling of the court. Jenkins v. Long, 170 N.C. 269. It was competent to show who was in charge of the work, and that J. C. Hollifield was the man. That was one of the important questions in the case. We do not see why it was not also competent to prove that the hands complained to Hollifield that the force was not sufficient to handle the poles, and his reply admitting it, with the order to go on with the work. It was a part of what was done at the time, and the *Page 778 
declaration of one who was then acting in the place of his principal. The order given by J. C. Hollifield to the hands was a relevant fact and the court properly admitted evidence to prove what it was. It is one of the allegations of the complaint that plaintiffs were ordered by Hollifield to do the work and that he had the power to give the order. The court did not err in allowing plaintiff to testify how the injury was received or what caused it, and why more hands were needed. He was merely stating facts within his own knowledge. In other words, he was stating what he had seen and the nature of which he understood by former experience. It was not merely an opinion. Murdock v. R. R., 159 N.C. 131; Brittv. R. R., 148 N.C. 37; and especially Ives v. Lumber Co., 147 N.C. 306, which is similar in this respect. All these rulings were correct. There was evidence in the case from which the jury could reasonably draw the inference that J. C. Hollifield was superintendent or foreman of the gang of laborers and as such represented his principal, and that those who acted under his orders had just reason to believe that the refusal or failure to obey him would or might be followed by a discharge from the service in which they were engaged. Turner v. Lumber Co.,119 N.C. 387; Mason v. R. R., 111 N.C. 482 (s. c., 114 N.C. 718);Shadd v. R. R., 116 N.C. 968. Upon the question of the plaintiff's earning capacity and the extent to which it had been impaired by the injury, we do not see why it was not competent to prove his habits, that is, that he was sober and industrious, for such a man would surely be able to do more for himself in the world than a lazy, drunken, and thriftless one. 8 Rul. Case Law, sec. 172; C. M. and E. Company v.Anderson, 98 Tex. 156[98 Tex. 156]; Kinston v. R. R., 112 Mich. 40. The testimony of Dr. Justice seems to be based upon a personal examination of plaintiff to ascertain his mental and physical condition, and he really spoke only of such condition. In answer to the hypothetical question, he simply stated that he could form an opinion as to whether the (725) plaintiff's condition will continue as it is or whether it will be worse. In this respect nothing harmful was said by him. This also substantially applies to the testimony of the medical experts. The motion to strike out testimony, even if the latter is incompetent, was within the sound discretion of the court. S. v. Efler, 85 N.C. 585;Johnson v. Allen, 100 N.C. 136; Duggar v. McKesson, ibid., 1; S. v.Pratt, 88 N.C. 639; Simpson v. Pegram, 112 N.C. 541.
There was evidence for the jury upon the question of negligence, and the motion for a nonsuit was properly overruled. The jury could infer from the evidence submitted to them that J. C. Hollifield was representing the defendant in superintending the work of loading the cars with telephone poles, and had power and authority over the hands engaged in it. 26 Cyc., 1307. If he ordered them to do work which would expose *Page 779 
them to danger, and this order was negligently given, he would be liable jointly with his master, the defendant, for the resultant injury. Means v.R. R., 126 N.C. 424; Allison v. R. R., 129 N.C. 336; 26 Cyc., 1383, and especially Wright v. Crompton, 53 Ind. 337; Howe v. R. R., 60 L.R.A. (Wash.), 959; R. R. v. Thompson, 200 U.S. 206. There was no expression of opinion by the Court, but simply a statement that if defendant was short of hands this would be no legal excuse for the wrong. It was its duty to have a sufficient force to do the work and make it reasonably safe to perform it. Pigford v. R. R., 160 N.C. 93; Shaw v. Mfg. Co., 146 N.C. 235.
The charge of the court as to negligence and contributory negligence was in accordance with our decisions upon those questions. The court defined the duty of the defendants with respect to the plaintiff while he was performing the task assigned to him, and also the duty of plaintiff to himself, and this was done with full statement as to what care and circumspection was required of each. The judge did not place too great a burden upon the defendants, or either of them, nor was there any departure from the true rule as to proximate cause. We stated the doctrine of proximate cause as applicable to both negligence and contributory negligence in Treadwell v. R. R., 169 N.C. 701. The judge gave the instructions requested by the defendant, as far as he could do so and stay within the law of the case, and they were not only given to this extent, but in a very clear and ample manner. The charge and responses to special prayers embraced all the law which was applicable to the facts, disclosed by the evidence, including that relating to assumption of risk.
We have, after a thorough examination of the case, been unable to discover any error therein.
No error.