PENNY CUMMINGS, Plaintiff v. AGNES ORTEGA, M.D. and WOMEN'S HEALTH CARE SPECIALISTS, Defendants

No. COA09-1491

(Filed 17 August 2010)

## 1. Appeal and Error— untimely notice of appeal—appeal dismissed—certiorari granted

Plaintiff's motion to dismiss defendants' appeal of an order allowing plaintiff's motion to set aside the verdict in a medical malpractice action was allowed as defendants' notice of appeal was untimely. However, the Court of Appeals granted defendants' petition for writ of *certiorari* to review the merits of the appeal fully. Defendants' appeal from the trial court's order denying defendants' motion for reconsideration was timely and was not dismissed.

## 2. Appeal and Error— standard of review—abuse of discretion—orders entered pursuant to Rules 59 and 60

An abuse of discretion standard applied to defendant's appeal of the trial court's orders allowing plaintiff's motion to set aside the verdict pursuant to Rule 60(b) of the North Carolina Rules of

Civil Procedure and granting a new trial pursuant to Rule 59(a) in a medical malpractice action.

**3. Trials— juror misconduct—jury verdict set aside—new trial granted—no abuse of discretion**

The trial court in a medical malpractice action did not abuse its discretion by setting aside a jury verdict in favor of defendants pursuant to Rule 60(b) of the North Carolina Rules of Evidence and awarding plaintiff a new trial pursuant to Rule 59(a). The trial court did not consider inadmissible evidence contained in juror affidavits submitted to impeach the jury verdict and thus, neither committed legal error nor abused its discretion in setting aside the verdict and refusing to reconsider its decision.

Appeal by defendants from an order entered 13 April 2009 by Judge Steve A. Balog in Harnett County Superior Court. Heard in the Court of Appeals 12 May 2010.

*The Neighbors Law Firm, P.C., by Patrick E. Neighbors, for plaintiff appellee.*

*Crawford & Crawford, L.L.P., by Renee B. Crawford, Robert O. Crawford III, and Arienne P. Blandina, for defendant appellants.*

HUNTER, JR., Robert N., Judge.

Agnes Ortega, M.D., and Women's Health Care Specialists ("defendants") appeal from a Rule 59(a) order setting aside a jury verdict in favor of defendants on 16 December 2008. The verdict found no negligent acts by defendant in a medical malpractice action filed by Penny Cummings ("plaintiff"). Defendants subsequently filed a Rule 60(b) Motion for Reconsideration and Relief from Order which the trial court denied on 10 July 2009.

On appeal, defendants contend that the trial court erred by considering juror affidavits to impeach the verdict of the jury and award plaintiff a new trial pursuant to Rule 59. Furthermore, defendants contend that the juror affidavits contain inadmissible evidence, and as such, the trial court committed legal error by relying on that evidence to grant a new trial. After review, we conclude that the trial court did not consider inadmissible evidence contained in the affidavits, and therefore neither committed legal error, nor abused its discretion in setting aside the verdict and in refusing to reconsider its decision.

CUMMINGS v. ORTEGA

[206 N.C. App. 432 (2010)]

## I. Factual Background

Plaintiff consulted defendants for gynecological problems for which defendant Dr. Agnes Ortega had treated her for approximately 8 years. In May of 2002, plaintiff underwent a diagnostic laparoscopy for infertility. During the surgical procedure which involved the use of a needle to cauterize, open, and explore cysts on the ovaries, plaintiff's right external iliac artery was inadvertently lacerated. Defendants controlled the bleeding and plaintiff recovered temporarily; subsequently, plaintiff began suffering from pain and other ailments regarding her right leg.

Plaintiff filed a medical malpractice action against defendants on 18 May 2005 seeking damages for her alleged injuries. Plaintiff alleged and defendant denied that the leg injuries claimed were a result of the surgical procedure and the inadvertent laceration. Defendants alleged that any injuries resulting from the inadvertent laceration were fully healed, and the leg ailments were caused by other medical issues from which plaintiff suffered.

On 1 December 2008, plaintiff's civil action was called for trial in Harnett County Superior Court, Judge Steve A. Balog presiding. After preliminary discussions between counsel and the bench, the Court instructed the prospective jurors as follows:

> Because of your special status here right now as prospective jurors, later after our trial jurors are chosen it is important that you remember that during your time here, it is your duty not to talk among yourselves about the proceedings in this court or about this case here for trial. You must understand that neither the Court, the parties, the witnesses, the lawyers, nor anyone else interested or involved in these matters may have any private contact or conversation with you during your time here. This should not be regarded as mere aloofness, but as a wise precaution against improper contact or influence or the appearance of that. If you need anything for your comfort or otherwise, approach the bailiff. He can help you, and if he can't help you enough, needs my assistance, I'll get involved. But he should be able to handle just about everything that you may need.

> The parties in the cases to be tried this week are entitled to jurors who approach their cases with an open mind, and agree to keep their minds open until a verdict is reached. Jurors must be as free as humanly possible from bias, prejudice or sympathy, and

must not be influenced by preconceived ideas, either as to facts or as to the law. You must not form an opinion or express an opinion about any case that is here for trial.

After this instruction, *voir dire* of the jurors began and lasted for three days before the jury was impaneled. At each of the 12 recesses the court took before impaneling the jury, the judge gave the following admonitions to the jury:

Follow the instructions I've given you throughout the trial. I remind you of those, not to talk about the case among yourselves or with anyone else. Don't have any contact whatsoever with the people interested or involved in this matter. Don't conduct any independent research into matters or issues that may be raised by this trial. Don't form or express any opinions about the case.

After impaneling the jury, the judge further instructed the jury as to their conduct during deliberations as follows:

While you serve as a juror in this case, you must obey the following rules. First, you must not talk about the case among yourselves. The only place this case may be talked about is in the jury room, and then only after I tell you to begin your deliberations at the conclusion of the trial. You don't talk about the case while it's going on. You don't talk about the case until I tell you that you can at the end of the trial when you begin your deliberations in the jury room.

Second, you must not talk about this case with anyone else, including members of your family or your co-workers, or allow anyone else to talk with you or say anything in your presence about this case. As I said, that includes your family members, people that you are close to that will be curious about what you are doing and what's going on, and you have to enforce with them that you can't talk about the case. I believe I mentioned earlier that after the trial is over and you've been released, you will be able to talk about it at that point, but you can't until that time.

If anyone communicates or attempts to communication with you or in your presence about this case, you must notify me of that fact immediately through one of the bailiffs.

Third, while you sit as a juror in this case, you're not to form an opinion about the outcome of this case, nor are you to express to anyone any opinion about the case until I tell you to begin your deliberations at the conclusion of the trial.

Fourth, you must not talk or communicate in any way with any of the parties in this case, the witnesses, the lawyers, or other persons interested or involved in this case. This rule applies inside as well as outside the courtroom and the courthouse, and it prohibits any type of conversation, whether about the evidence in this case, or about the weather, or just the other conversations to pass the time of day.

. . . .

Fifth, you must not read about this case in the newspaper or listen to any radio or television broadcasts of this case, if there is such a thing. Your verdict must be based exclusively on what is brought out in this courtroom.

Sixth, you must not make any independent inquiry or investigation by any means into matters or issues raised by this trial, including books, magazines, law books, encyclopedias, the Internet, anything and everything else. You get all your information right here.

Each of you must obey each of these rules to the letter. Unless you do so, there is no way the parties can be assured of absolute fairness and impartiality.

It is your duty, both while the trial is in progress and while it is in recess and while you're in the jury room, to see that you remain a fair and impartial trier of the facts. If you violate these rules, you violate an order of the Court, and this is contempt of court and could subject you to punishment as provided by law.

A two-week jury trial followed and at each of the sixty recesses that were held, the judge admonished the jurors using substantially the same admonition as used during jury selection quoted above.

After the close of evidence, the jurors were instructed by the judge on the substantive elements of the law and a unanimous verdict was reached and judgment was entered in favor of defendants on 16 December 2008.

On 18 December 2008, plaintiff's counsel was contacted by juror Rachel Simmons ("Simmons"), who alleged substantial juror misconduct prior to the taking of any evidence in the trial. Simmons provided by an affidavit, the following testimony:

CUMMINGS v. ORTEGA

[206 N.C. App. 432 (2010)]

I, Rachel Simmons, avow that the following is true and correct:

I served on the jury for the legal case Cummings v. Ortega. I believe that significant juror misconduct occurred during the trial. Upon my recollection, on December 4, 2008, prior to any evidence introduced by the plaintiff, Juror No. 8 [Githens], while in the jury deliberation room, and in the presence of myself and other jurors, made the statement to the effect that his mind was made up, and that the other jurors could agree with him or they would sit there through the rest of the year. He subsequently stated that he wished the plaintiff, Ms. Cummings, would have died, and we wouldn't have to be sitting there at all. He also attempted to discuss the case prior to deliberations with several jurors present, at which point another juror reprimanded him.

These statements interfered with my thought process about the evidence during the plaintiff's case, and I believe it interfered with the other jurors as well during deliberation, as they began realizing any discussion about the evidence was futile, and they didn't want to continue serving through the holidays. In my opinion, there was not a full and frank discussion of the evidence.

On 12 January 2008, a corroborating affidavit was provided by another juror, Joel Murphy ("Murphy"):

I, Joel Murphy, swear that the following is true and correct:

I served on the jury for the legal case Cummings v. Ortega. Prior to actual deliberation on the evidence in this case, Juror No. 8 made statements that his mind was made up and no matter what the evidence he wasn't going to change it. This statement had a chilling effect on other jurors. He also exhibited extremely disruptive behavior and was especially discourteous to the female jurors in the case, to the extent that I believe it affected their ability to express their opinions about the evidence. I believe several jurors did not engage in full discussion of the evidence because they didn't want to sit through the holidays in a futile attempt to discuss the evidence with him.

On 14 January 2009, plaintiff filed a motion to set aside the verdict pursuant to Rule 59(a) of the North Carolina Rules of Civil Procedure. In the motion, plaintiff alleged that after the jury was selected, the trial court gave N.C.P.I., Civ. 100.20 at every recess. Plaintiff further alleged, based on information obtained from the aforementioned affidavits of Jurors Murphy and Simmons, that Juror

Githens "prior to any evidence, held an inelastic position as to the outcome of the case, and tainted the entire jury pool by threatening that he would stonewall the case through the holidays until the end of the year unless the jurors agreed with him" and that Githens sent text messages during the trial. Moreover, plaintiff's Rule 59 motion asserted that the entire jury disregarded the trial court's instructions and engaged in misconduct by failing to report Githens' misconduct.

In considering plaintiff's motion, the trial court reviewed the affidavits of jurors Simmons and Murphy and found them to be admissible as to matters relating to juror misconduct that occurred prior to deliberation. The court further found that the "matters within the submitted affidavits that relate to extraneous matters and certain matters occurring after the commencement of deliberation of the jury, inadmissible, and has not considered those matters with regard to the Plaintiff's Motions." Based on these parts of the affidavits, the trial court set aside the jury verdict by an order filed on 13 April 2009 and granted a new trial pursuant to North Carolina Rule of Civil Procedure 59(a), subsections (1) (trial irregularity), (2) (jury misconduct), and (5) (manifest disregard of jury).

In response to the trial court's order, defendants obtained an affidavit from Juror Githens on 17 April 2009. In his affidavit, Githens avers, in pertinent part, as follows:

8. I am providing this affidavit because I cared deeply about serving as a juror on this trial and feel very distressed that my conduct has been construed by the court to cast any doubt upon the fairness of this trial to either party.

9. Except as set out in Paragraph 12, I do not recall making the specific statements that my fellow jurors allege I made.

10. However, if I did make such statements, they were made only to my fellow jurors while in the jury room. I know this because I certainly never spoke at any time to anyone else about the case until after the verdict was returned and we were discharged as a jury.

11. In addition, any such statements made to my fellow jurors in the jury room would not have been intended to be taken literally. Any such comments certainly would not have been intended to sway, intimidate or persuade any other jurors during the evidence portion of the trial. If anything, such comments would have

CUMMINGS v. ORTEGA

[206 N.C. App. 432 (2010)]

been only a reflection of my state of mind at the time at having to anticipate a three-week trial.

12. I do recall making a general statement to the effect that, "once my mind was made up, I would not change it." However, I did not state that I had made up my mind before any evidence was presented, because I had not. The affidavits of Mr. Murphy and Ms. Simmons are inaccurate.

13. Any such statements by me also were not, and should not be construed as, an accurate statement of how I intended to conduct myself as a juror or how I did conduct myself as a juror regarding my duties to listen to and consider all of the evidence and the law before rendering my verdict.

14. Any such statements by me were not, and should not be construed as an accurate statement of how I reached my verdict.

Based on this affidavit, defendants filed a motion for reconsideration and relief from order, pursuant to Rule 60(b) of the North Carolina Rules of Civil Procedure on 15 April 2009. In that motion, defendants allege that the trial court improperly considered Simmons' and Murphy's affidavits. Defendant's motion was denied on 10 July 2009.

## II. Jurisdiction and Standard of Review

[1] Plaintiffs filed a motion to dismiss defendants' appeal in part because defendant's notice of appeal of the 13 April 2009 order allowing plaintiff's motion to set aside the verdict pursuant to N.C. Gen. Stat. § 1A-1, Rule 59(a) was not filed until 21 July 2009, well over 30 days after entry of the order. Under N.C.R. App. P. 3(c)(3), the time for taking appeal was tolled for all parties until disposition of plaintiff's motion to set aside the verdict. The order granting plaintiff's Rule 59(a) motion was entered on 13 April 2009. Defendants had an immediate right to appeal from the 13 April 2009 order, as it granted a new trial. Although an order granting a new trial is interlocutory, defendants had a right to immediate appeal pursuant to N.C. Gen. Stat. §§ 7A-27(d)(4) and 1-277(a), because the trial court's order allowed a new trial. However, instead of filing a notice of appeal, defendants filed their motion for reconsideration pursuant to N.C. Gen. Stat. § 1A-1, Rule 60 on 15 April 2009. N.C.R. App. P. 3 does not toll the time for taking an appeal during the pendency of a Rule 60 motion, so defendants' appeal of the 13 April 2009 order should have been filed no later than 30 days after 15 April 2009. Defendants essentially concede this point in their response to plaintiff's motion to dis-

miss the appeal as to the 13 April 2009 order. Although the trial court also certified "this matter" for immediate appeal under N.C. Gen. Stat. § 1A-1, Rule 54, such certification was unnecessary as to the 10 July 2009 order, because defendants had a right to immediate appeal under N.C. Gen. Stat. § 7A-27(d)(4). Also, Rule 54 certification is intended to permit review of an interlocutory order but cannot extend the time for taking an appeal, so the Rule 54 certification cannot confer jurisdiction as to the appeal from the 13 April 2009 order, which was not timely filed. *See DKH Corp. v. Rankin-Patterson Oil Co., Inc.*, 348 N.C. 583, 500 S.E.2d 666 (1998) ("We have held that N.C.G.S. § 1-277 and N.C.G.S. § 7A-27(d) allow an appeal to be taken from an interlocutory order which affects a substantial right although the appeal may be interlocutory."). Therefore, we must allow plaintiff's motion to dismiss defendants' appeal as to the 13 April 2009 order, as it was not timely filed. Defendants' appeal from the 10 July 2009 order denying defendants' motion was timely, so it is not dismissed.

Defendants have also filed a petition for certiorari pursuant to N.C.R. App. P. 21(a) for review of the 13 April 2009 order. Our Supreme Court has determined that this Court has authority to grant certiorari where a notice of appeal was not timely filed.

> Appellate Rule 21(a)(1) provides: "The writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgments . . . of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action." Construing [Appellate Rule 27(c) and Appellate Rule 21(a)(1)] together, we conclude that Rule 21(a)(1) gives an appellate court the authority to review the merits of an appeal by certiorari even if the party has failed to file notice of appeal in a timely manner. *Anderson v. Hollifield*, 345 N.C. 480, 482, 480 S.E.2d 661, 663 (1997).

We believe it is appropriate to allow defendants' petition for certiorari to review the merits of this appeal fully. As defendants have argued, there is no prejudice or surprise to the plaintiff from allowing review of the 13 April 2009 order, in conjunction with the 10 July 2009 order. Essentially the same issues are raised as to both orders. Although the notice of appeal was technically filed 68 days late, it was filed only 11 days after entry of the 10 July 2009 order. Apparently all parties initially failed to realize that the notice of appeal was late as to the 10 July 2009 order, as all parties stipulated in the record on appeal that defendants' notice of appeal was "timely." All of the issues

arising under both orders have been fully briefed by the parties. Defendants also note that this Court has recognized that the appropriate procedure in this situation would have been to file their Rule 60 motion with the trial court after giving appeal from the order of 13 April 2009, and the trial court would still have had limited jurisdiction to consider the Rule 60 motion for the purpose of indicating how it would rule upon the motion. In *Hall v. Cohen*, we explained this procedure as follows:

> As a general rule, an appellate court's jurisdiction trumps that of the trial court when one party files a notice of appeal unless the case has been remanded from the appellate court for further determination in the trial court. The trial court retains limited jurisdiction to indicate how it is inclined to rule on a Rule 60(b) motion.
>
> Upon the appellate court's notification of a Rule 60(b) motion filed with the trial court, this Court will remand the matter to the trial court so the trial court may hold an evidentiary hearing and indicate "how it [is] inclined to rule on the motion were the appeal not pending." This practice allows the appellate court to "delay consideration of the appeal until the trial court has considered the [Rule] 60(b) motion. [So that upon] an indication of favoring the motion, appellant would be in position to move the appellate court to remand to the trial court for judgment on the motion and the proceedings would thereafter continue until a final, appealable judgment is rendered." Arguments pertaining to the grant or denial of the motion along with other assignments of error could then be considered by the appellate court simultaneously.

177 N.C. App. 456, 458, 628 S.E.2d 469, 471 (2006) (citations omitted). As the trial court already considered the Rule 60 motion, our granting of certiorari accomplishes the same result as the procedure approved by *Hall*. Although the correct procedure was not followed, we have the benefit of the trial court's ruling upon the Rule 60 motion, which permits us to review all of the issues on appeal. We therefore grant defendants' petition for certiorari in our discretion to permit review of the 13 April 2009 order in conjunction with the appeal from the 10 July 2009 order.

**[2]** Plaintiff contends appellate review of an order of a trial court granting or denying a new trial pursuant to Rule 59 of the North Carolina Rules of Civil Procedure is limited to the question of whether the record discloses a manifest abuse of discretion or that

the ruling was clearly erroneous. *Worthington v. Bynum*, 305 N.C. 478, 290 S.E.2d 599 (1982); *Pinckney v. Van Damme*, 116 N.C. App. 139, 447 S.E.2d 825 (1994). Appellate review of Rule 60 motions is also subject to review under the abuse of discretion standard. *Sawyer v. Goodman*, 63 N.C. App. 191, 303 S.E.2d 632 (1983).

Defendant contends that the applicable standard of review for this matter is *de novo* review on the basis that the improper admission of the affidavits by Simmons and Murphy constitute an error of law because the affidavits referred to Githens' state of mind. *See Selph v. Selph*, 267 N.C. 635, 148 S.E.2d 574 (1966) and *Stone v. Baking Co.*, 257 N.C. 103, 125 S.E.2d 363 (1962) (Both cases provide that, where the trial judge based his decision to grant a new trial solely upon evidence which, under prior decisions of the Court, is incompetent, our Court must review the trial court's decision *de novo* to determine whether the court committed an error of law.).

Because the outcome of the appeal turns on the standard of review we employ to analyze the issues on appeal, we will briefly explain why we employ the abuse of discretion standard in this matter. In considering both a Rule 59(a) motion and a Rule 60 motion, a trial judge, as opposed to the appellate courts, is in a better position to assess the effect which any trial irregularity or juror misconduct may have on both the outcome of a trial and the fairness of the procedures. The trial judge is an observer to the events which he adjudicates. When evaluating a Rule 59(a) motion, there is always a tension between the duty of the judge to uphold the integrity of the jury's verdict as part of the parties' constitutional right to a jury trial and the duty of the judge to ensure that all parties receive a fair trial as part of the constitutional right to due process and impartial procedures. The balancing of the interests required in making this decision is usually case specific.

With regard to the trial court's review of the jurors' affidavits to grant plaintiff a new trial, we note that the trial judge is presumed to be capable of distinguishing competent evidence from incompetent evidence. *See Blackwell v. Hatley*, —— N.C. App. ——, ——, 688 S.E.2d 742, 745-46 (2010) (providing that " '[w]here both competent and incompetent evidence is before the trial court, we assume that the trial court, when functioning as the finder of facts, relied solely upon the competent evidence and disregarded the incompetent evidence.' When sitting without a jury, the trial court is able to eliminate incompetent testimony, and the presumption arises that it did so.' ") (citations omitted).

In the present case, the trial court's order specifically provided that the court did not consider "matters within the submitted affidavits that relate[d] to extraneous matters and certain matters occurring after the commencement of deliberation of the jury[.]" Moreover, we note that the trial court had an opportunity to observe the members of the jury before and during trial and faithfully instructed them to refrain from talking about the case and refrain from forming an opinion about the outcome of the case until all of the evidence had been presented and the jury retired for deliberation. Finally, the trial court's order finds specifically that its decision was not founded on a conclusion of the mental processes of the jurors regarding substantive law or evidence during deliberations and does not rest on these considerations. It is obvious the trial court was aware of the limitations contained in Rule 60(b) which generally prevent the court from reviewing juror affidavits to impeach the jury verdict. However, because the affidavits include more than merely information regarding the mental processes of the jurors, we do not think it necessary to engage in a *de novo* review. Based on this Court's long held presumption of the trial court's capability to distinguish competent evidence from incompetent evidence, we disagree with defendants' contention and hold that the proper standard of review in this case is abuse of discretion.

" 'It has been long settled in our jurisdiction that an appellate court's review of a trial judge's discretionary ruling either granting or denying a motion to set aside a verdict and order a new trial is strictly limited to the determination of whether the record affirmatively demonstrates a manifest abuse of discretion by the judge.' " *Davis v. Davis*, 360 N.C. 518, 523, 631 S.E.2d 114, 118 (2006) (quoting *Worthington v. Bynum*, 305 N.C. 478, 482, 290 S.E.2d 599, 602 (1982)). " ' "A ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." ' " *Crocker v. Roethling*, 363 N.C. 140, 156, 675 S.E.2d 625, 636 (citations omitted), *reh'g denied*, 363 N.C. 381, 678 S.E.2d 236 (2009).

[3] In awarding a new trial, the trial court specifically evaluated the affidavits as they related to irregularity, juror misconduct and the disregard of the court's instructions pursuant to North Carolina Rule of Civil Procedure 59(a). Upon review, all the affidavits evince that some jurors began discussing the merits of the case before deliberations began, against the repeated instructions of the court. This fact appears uncontested. Furthermore, it appears from all affidavits that after such discussions had taken place, that no juror reported to the

trial judge, any misconduct which was against the repeated instructions of the court. While none of the juror affidavits specifically discuss these factors and attempt to evince obviously incompetent matters which a judge should not consider under Rule 60(b), the factual inference that remains is that some jurors discussed the case before deliberations and no juror reported these discussions to the trial judge. For purposes of Rule 59(a) these acts would qualify as competent evidence to show a trial irregularity, misconduct of the jury, or manifest disregard by the jury of the instructions of the court.

The fact that a few jurors may have begun commenting on evidence before deliberations, against the instructions of the court, is manifest disregard of the instructions. However, because no other juror reported to the trial judge before the deliberations began when the harm could have been remedied, any harm arising from these pre-deliberation discussions cannot be easily remedied after the verdict. While the preliminary discussions of evidence by one or more jurors is improper, the failure of any of the twelve jurors to bring it to the attention of the judge is more serious, because it creates an impression that the jurors cannot understand what the judge is repeatedly telling them and cannot conform their conduct to the repeated instructions. If a jury cannot follow this simple instruction that was designed to ensure the fairness of the judicial process, then it becomes problematic as to whether the jurors could understand and follow the complex instructions on liability and damages. Jury instructions regarding the procedures to be used during a trial are not incantations to give a ritual appearance of justice, but a practical, meaningful guide to lay persons in the procedures they must employ in reaching a decision. Not every violation of a judge's instruction merits a new trial; however, this conduct is placed on a sliding scale which is balanced by the trial judge's discretion and duty to ensure a fair trial. Our law does not draw a bright line test for resolving the tension between preserving the integrity of a jury verdict and overturning a verdict when the fairness of the judicial process is brought into question. We find that the abuse of discretion standard on this evidence is the proper standard to employ under these narrow facts. We believe the trial judge understood the substantial costs to the parties and the courts in overturning a jury verdict. However, where the trial judge finds that the fairness of the judicial process has been breached under Rule 59(a), he has the broad discretion to balance these competing concerns to achieve a just result, and our case law

**CUMMINGS v. ORTEGA**

[206 N.C. App. 432 (2010)]

does not allow us to vacate this decision absent manifest abuse. *See Davis*, 360 N.C. at 523, 631 S.E.2d at 118.

Likewise, when ruling on defendants' Rule 60 motion for reconsideration of its Rule 59 motion, the trial court took careful consideration of Githens' affidavit and used its proper discretion to weigh the credibility of the competing affidavits of Simmons and Murphy (which were given shortly after trial) and of Githens, who proffered his affidavit after the judge's initial order for a new trial months after the initial trial had concluded. We note that juror Githens does not affirmatively state that he did not make the pre-deliberation comments to the other jurors and instead avers that he does not remember making the comments, but if he did, it could not have been understood in the manner in which the two other jurors had comprehended it. Based on his ruling, the trial judge did not find this evidence convincing, nor do we. The trial court was within its discretion when it clearly articulated on 10 July 2009, that it "evaluated the aforementioned affidavits only as they relate to the extraneous prejudicial information to the jury, and not related to the juror's mental processes, or to the effect upon any juror's mind or emotions as influencing him or her to assent to or to dissent from the verdict."

While the statements of Githens made before the presentation of any evidence may or may not have had a prejudicial impact on plaintiff, the fact that any discussion of his comments of whatever nature took place and were not reported to the judge by one or more jurors touches on the fairness of the trial process. We affirm the decision of the trial judge.

## IV. Conclusion

The trial court properly exercised its discretion in granting plaintiff's motion pursuant to Rule 59(a) and denying defendants' motion pursuant to Rule 60(b). For the reasons stated herein, we hold that on these facts, the trial court did not err by admitting juror affidavits and considering them as a factor in awarding a new trial. For the reasons stated herein, we affirm.

Affirmed.

Judges McGEE and STROUD concur.