PENNY CUMMINGS v. AGNES ORTEGA, M.D. AND WOMEN'S HEALTH CARE
SPECIALISTS, P.A.

No. 417PA10

(Filed 7 October 2011)

## Jury— motion to set aside verdict—affidavits concerning juror's statements—internal influence—not admissible

When setting aside a jury verdict, the trial court improperly relied on evidence that a juror had expressed firm opinion to other jurors before deliberations began. The juror affidavits at issue were inadmissible pursuant to N.C.G.S. § 8C-1, Rule 606(b) because they spoke to a juror's state of mind and thus concerned an internal rather than an external influence.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 200 N.C. App. 432, 697 S.E.2d 513 (2010), affirming both an order granting plaintiff a new trial entered on 13 April 2009 and an order entered on 10 July 2009 denying defendants' motion for reconsideration and relief from the 13 April 2009 order, both entered by Judge Steve A. Balog in Superior Court, Harnett County. Heard in the Supreme Court 2 May 2011.

*Neighbors Law Firm, P.C., by Patrick E. Neighbors, for plaintiff-appellee.*

*Crawford & Crawford, LLP, by Renee B. Crawford, Robert O. Crawford, III, and Arienne P. Blandina, for defendant-appellants.*

JACKSON, Justice.

In this appeal we consider whether evidence contained in juror affidavits is admissible to support plaintiff's motion for a new trial in her medical malpractice case. Because we hold that these statements are inadmissible pursuant to Rule 606(b) of the North Carolina Rules of Evidence, we reverse.

On 18 May 2005, plaintiff Penny Cummings filed a medical malpractice action against defendants in the Superior Court, Harnett County. In her complaint, plaintiff alleged that she suffered personal injuries during a diagnostic laparoscopy performed by defendant Agnes Ortega, M.D. At the time of the surgery, Ortega was the owner of defendant Women's Health Care Specialists, P.A. Defendants answered, denying all allegations by plaintiff.

The case was called for jury trial on 1 December 2008. During slightly more than two weeks, sixteen witnesses presented testimony at trial focusing primarily on medical issues of a highly technical nature. On 16 December 2008, the jury returned a unanimous verdict finding that defendants were not liable for plaintiff's injuries. The trial court entered judgment for defendants on 5 January 2009.

On 18 December 2008, two days after the jury returned its verdict, Rachel Simmons, one of the jurors, contacted plaintiff's attorneys to report misconduct by a fellow juror, Charles Githens. According to Simmons, Githens made several statements about the case to the other jurors in the jury room before the case was submitted formally to the jury, notwithstanding repeated warnings from the trial court. On 2 January 2009, Simmons executed an affidavit stating:

> I served on the jury for the legal case Cummings v. Ortega. I believe that significant juror misconduct occurred during the trial. Upon my recollection, on December 4, 2008, prior to any evidence introduced by the plaintiff, Juror No. 8 [Githens], while in the jury deliberation room, and in the presence of myself and the other jurors, made the statement to the effect that his mind was made up, that the other jurors could agree with him or they would sit there through the rest of the year. He subsequently stated that he wished the plaintiff, Ms. Cummings, would have died, and we wouldn't have to be sitting there at all. He also attempted to discuss the case prior to deliberations with several jurors present, at which point another juror reprimanded him.
>
> These statements interfered with my thought process about the evidence during the plaintiff's case, and I believe it interfered with the other jurors as well during deliberation, as they began realizing any discussion about the evidence was futile, and they didn't want to continue serving through the holidays. In my opinion, there was not a full and frank discussion of the evidence.

On 12 January 2009, plaintiff's attorneys obtained a second affidavit from another juror, Joel Murphy. Murphy's affidavit corroborated Simmons's statements:

> I served on the jury for the legal case Cummings v. Ortega. Prior to actual deliberation on the evidence in this case, Juror No. 8 [Githens] made the statements that his mind was made up and no matter what the evidence he wasn't going to change it. This statement had a chilling effect on other jurors. He also exhibited extremely disruptive behavior and was especially dis-

courteous to the female jurors in the case, to the extent that I believe it affected their ability to express their opinions about the evidence. I believe several jurors did not engage in full discussion of the evidence because they didn't want to sit through the holidays in a futile attempt to discuss the evidence with him.

Notably, neither Simmons nor Murphy reported Githens's misconduct to the trial court during the course of the trial, notwithstanding the trial court's repeated instructions to do so.[1]

Based upon these two affidavits, plaintiff filed a motion on 14 January 2009 to set aside the verdict and grant a new trial pursuant to Rule 59(a)(2) of the North Carolina Rules of Civil Procedure, arguing that she was denied a fair trial because of Githens's misconduct. The trial court heard plaintiff's motion on 20 March 2009. During this hearing defendants objected to introduction of the affidavits. The trial court ruled that the affidavits were inadmissible to the extent that they related to "extraneous matters and certain matters occurring after the commencement of deliberation of the jury." But the trial court ruled that the affidavits were admissible "as to the matters within that relate to juror misconduct occurring prior to deliberation of the jury." As a result, the trial court set aside the verdict and granted plaintiff's motion for a new trial in an order filed on 13 April 2009.

On 15 April 2009, defendants filed a motion seeking relief from the trial court's order pursuant to Rule 60(b) of the North Carolina Rules of Civil Procedure. Defendants' motion was supported by an affidavit from Githens, which stated in relevant part:

8. I am providing this affidavit because I cared deeply about serving as a juror on this trial and feel very distressed that my

---

1. During the course of the proceedings, the trial court instructed the jurors approximately sixty times not to discuss the case before deliberations began. After the jury was impaneled, the trial court gave its most comprehensive statement regarding this duty:

> While you serve as a juror in this case, you must obey the following rules. First, you must not talk about the case among yourselves. The only place this case may be talked about is in the jury room, and then only after I tell you to begin your deliberations at the conclusion of the trial. You don't talk about the case while it's going on. You don't talk about the case until I tell you that you can at the end of the trial when you begin your deliberations in the jury room.

The trial court also instructed the jurors to notify the bailiff of any violations of its instructions stating, "If anyone communicates or attempts to communicate with you or in your presence about this case, you must notify me of that fact immediately through one of the bailiffs."

conduct has been construed by the court to cast any doubt upon the fairness of this trial to either party.

9. Except as set out in Paragraph 12, I do not recall making the specific statements that my fellow jurors allege I made.

10. However, if I did make such statements, they were made only to my fellow jurors while in the jury room. I know this because I certainly never spoke at any time to anyone else about the case until after the verdict was returned and we were discharged as a jury.

11. In addition, any such statements made to my fellow jurors in the jury room would not have been intended to be taken literally. Any such comments certainly would not have been intended to sway, intimidate or persuade any other jurors during the evidence portion of the trial. If anything, such comments would have been only a reflection of my state of mind at the time at having to anticipate a three-week trial.

12. I do recall making a general statement to the effect that, "once my mind was made up, I would not change it." However, I did not state that I had made up my mind before any evidence was presented, because I had not. The affidavits of Mr. Murphy and Ms. Simmons are inaccurate.

13. Any such statements by me also were not, and should not be construed as, an accurate statement of how I intended to conduct myself as a juror or how I did conduct myself as a juror regarding my duties to listen to and consider all of the evidence and the law before rendering my verdict.

14. Any such statements by me were not, and should not be construed as, an accurate statement of how I reached my verdict.

On 30 June 2009, the trial court denied defendants' motion.

At defendants' request, the trial court certified this matter for immediate appeal. On 17 August 2010, the Court of Appeals affirmed the trial court's order setting aside the verdict and awarding a new trial. *Cummings v. Ortega*, 206 N.C. App. 432, 697 S.E.2d 513 (2010). Defendants filed a petition for discretionary review on 21 September 2010, which we allowed in part on 15 December 2010.

Defendants argue that the trial court erred by considering evidence of alleged juror misconduct contained within juror affidavits to set aside the verdict and grant plaintiff a new trial. We agree.

"Ordinarily, a motion for a new trial is addressed to the sound judicial discretion of the trial judge and is not reviewable in the absence of an abuse of discretion." *Smith v. Price*, 315 N.C. 523, 533, 340 S.E.2d 408, 414 (1986). But a trial court's decision is reviewable when, as here, the court "acts based on an error in law." *Chandler v. U-Line Corp.*, 91 N.C. App. 315, 321, 371 S.E.2d 717, 721, *disc. review denied*, 323 N.C. 623, 374 S.E.2d 583, 583-84 (1988) (citing *Smith*, 315 N.C. at 533, 340 S.E.2d at 414; *Selph v. Selph*, 267 N.C. 635, 636-37, 148 S.E.2d 574, 575-76 (1966)).

The notion that juror testimony may not be permitted to impeach a verdict is both long-standing and well-settled. In 1821 this Court first recognized the common law rule that affidavits containing evidence of juror misconduct are inadmissible to impeach the validity of a jury's verdict. *State v. M'Leod*, 8 N.C. (1 Hawks) 344, 346 (1821) ("As to the misconduct of the Jury, it has been long settled, and very properly, that evidence impeaching their verdict must not come from the Jury; but must be shewn [sic] by other testimony."); *see also Purcell v. S. Ry. Co.*, 119 N.C. 728, 739, 26 S.E. 161, 162 (1896); *State v. Royal*, 90 N.C. 755, 755 (1884); *State v. Brittain*, 89 N.C. 481, 505 (1883); *State v. Smallwood*, 78 N.C. 560, 562-63 (1878). This rule, which was based upon Lord Mansfield's decision in *Vaise v. Delaval*, (1785) 99 Eng. Rep. 944 (K.B.), is intended to promote and protect the jury system. *See Jones v. Parker*, 97 N.C. 33, 34, 2 S.E. 370, 370 (1887) (characterizing the use of juror testimony to impeach a jury's verdict as "unsafe and unwise"). We have noted that without this rule "motions for a new trial would frequently be made, based upon incautious remarks of jurors, or declarations by them procured to be made by the losing party, or some person in his interest, and thus the usefulness and integrity of trial by jury would be impaired." *Johnson v. Allen*, 100 N.C. 131, 141, 5 S.E. 666, 670 (1888).

More than 160 years after our decision in *M'Leod*, the General Assembly enacted legislation codifying the North Carolina Rules of Evidence. *See* Act of July 7, 1983, ch. 701, sec. 1, 1983 N.C. Sess. Laws 666, 666. Rule 606(b) states in relevant part:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except

that a juror may testify on the question whether *extraneous* prejudicial information was improperly brought to the jury's attention or whether any *outside influence* was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

N.C.G.S. § 8C-1, Rule 606(b) (2009) (emphasis added). As we have noted previously, Rule 606(b) "reflects the common law rule that affidavits of jurors are inadmissible for the purposes of impeaching the verdict except as they pertain to *extraneous influences* that may have affected the jury's decision." *State v. Robinson*, 336 N.C. 78, 124, 443 S.E.2d 306, 329 (1994) (emphasis added) (citing N.C.G.S. § 8C-1, Rule 606 cmt.), *superseded on other grounds by statute*, Act of Mar. 23, 1994, ch. 21, sec. 5, 1993 N.C. Sess. Laws (1st Extra Sess. 1994) 59, 60 (amending N.C.G.S. § 15A-2002 effective 1 Oct. 1994), *cert. denied*, 513 U.S. 1089, 130 L. Ed. 2d 650 (1995). As the embodiment of our long-standing rule barring jurors from testifying against verdicts in which they participated, Rule 606(b) is intended to reconcile the competing interests of ensuring a fair trial for litigants and protecting our jury system. N.C.G.S. § 8C-1, Rule 606 cmt. para. 6. The rule seeks to "promote[] . . . freedom of deliberation, stability and finality of verdicts, and protection of jurors against annoyance and embarrassment." *Id.* (citing *McDonald v. Pless*, 238 U.S. 264, 267-68, 59 L. Ed. 1300, 1302 (1915)). At the same time, the official commentary acknowledges that "simply putting verdicts beyond effective reach can only promote irregularity and injustice." *Id.*

Our version of Rule 606(b) is virtually "identical" to the federal rule.[2] N.C.G.S. § 8C-1, Rule 606 cmt. para. 1. When construing the North Carolina Rules of Evidence, our appellate courts may look to federal cases " 'for enlightenment and guidance in ascertaining the intent of the General Assembly.' " *State v. Quesinberry*, 325 N.C. 125, 133 n.1, 381 S.E.2d 681, 687 n.1 (1989) (quoting N.C.G.S. § 8C-1, Rule 102 cmt.), *judgment vacated*, 494 U.S. 1022, 108 L. Ed. 2d 603 (1990). As a result, we previously have relied on the Supreme Court of the United States' decision in *Tanner v. United States*, 483 U.S. 107, 97 L. Ed. 2d 90 (1985) in interpreting our version of Rule 606(b). *See Quesinberry*, 325 N.C. at 132-37, 381 S.E.2d at 686-89. In *Tanner* the

---

2. In 2006 Fed. R. Evid. 606(b) was "amended to provide that juror testimony may be used to prove that the verdict reported was the result of a mistake in entering the verdict on the verdict form." Fed. R. Evid. 606 advisory committee's note (2007). This amendment does not affect our consideration of this case.

Court considered whether evidence that jurors were consuming alcohol and controlled substances during the defendant's criminal trial was admissible to support a post-verdict motion for a new trial. 483 U.S. at 116, 97 L. Ed. 2d at 103. Before the Supreme Court, Tanner and his codefendant argued that "substance abuse constitutes an improper 'outside influence' about which jurors may testify under [Federal] Rule 606(b)." *Id.* at 122, 97 L. Ed. 2d at 107. The Court rejected this argument stating: "In our view the language of the Rule cannot easily be stretched to cover this circumstance. However severe their effect and improper their use, drugs or alcohol voluntarily ingested by a juror seems no more an 'outside influence' than a virus, poorly prepared food, or a lack of sleep." *Id.*

Policy considerations were critical to the Court's decision in *Tanner*. 483 U.S. at 119-25, 97 L. Ed. 2d at 105-09. The Court observed that "[t]here is little doubt that postverdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior. It is not at all clear, however, that the jury system could survive such efforts to perfect it." *Id.* at 120, 97 L. Ed. 2d at 106. Specifically, the Court noted that allowing jurors to testify about juror misconduct in an attempt to invalidate a verdict to which they previously had assented would undermine "full and frank discussion in the jury room, [the] jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople." *Id.* at 120-21, 97 L. Ed. 2d at 106. Foremost, "[a]llegations of juror misconduct, incompetency, or inattentiveness, raised for the first time days, weeks, or months after the verdict, seriously disrupt the finality of the process." *Id.* Consequently, the Court in *Tanner* affirmed "the near universal and firmly established" common law rule that "flatly prohibited the admission of juror testimony to impeach a jury verdict" except in situations in which an external influence, "was alleged to have affected the jury." 483 U.S. at 117, 97 L. Ed. 2d at 104 (citations omitted). In its analysis, the Court in *Tanner* "stressed the importance of protecting the 'internal processes of the jury' from post-verdict inquiry." *Quesinberry*, 325 N.C. at 134, 381 S.E.2d at 687 (quoting *Tanner*, 483 U.S. at 120, 97 L. Ed. 2d at 106).

Following these principles, "[t]his Court also has distinguished between 'external' and 'internal' influences on jurors" when determining the admissibility of evidence challenging the validity of a verdict. *Id.* at 135, 381 S.E.2d at 688. As the Court in *Tanner* noted, this distinction is "not based on whether the juror was literally inside or

outside the jury room when the alleged irregularity took place; rather, the distinction [is] based on the nature of the allegation." 483 U.S. at 117, 97 L. Ed. 2d at 104. We therefore have defined external influences, which generally are admissible to prove the invalidity of a verdict, to include "information dealing with the defendant or the case which is being tried, which . . . reaches a juror without being introduced in evidence." *Robinson*, 336 N.C. at 125, 443 S.E.2d at 329 (quoting *Quesinberry*, 325 N.C. at 135, 381 S.E.2d at 688) (quotation marks omitted). In contrast, we have defined internal influences as "information coming from the jurors themselves—the effect of anything upon [a] juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith." *Id.* (quoting *Quesinberry*, 325 N.C. at 134, 381 S.E.2d at 687) (alteration in original) (quotation marks omitted). Internal influences may include: "a juror not assenting to the verdict, a juror misunderstanding the instructions of the court, a juror being unduly influenced by the statements of his fellow-jurors, or a juror being mistaken in his calculations or judgments." *Berrier v. Thrift*, 107 N.C. App. 356, 365-66, 420 S.E.2d 206, 211-12 (1992) (quoting Lillian B. Hardwick & B. Lee Ware, *Juror Misconduct* § 6.04, at 6-109 (1990)) (quotation marks omitted), *disc. review denied*, 333 N.C. 254, 424 S.E.2d 918 (1993). Therefore, pursuant to Rule 606(b), "a juror may not testify to show the effect of any statement, conduct, event, or condition upon the mind of a juror or concerning the mental processes by which the verdict was determined." *State v. Elliott*, 360 N.C. 400, 420, 628 S.E.2d 735, 748 (internal quotation marks omitted), *cert. denied*, 549 U.S. 1000, 166 L. Ed. 2d 378 (2006).

In the case *sub judice*, plaintiff argues that Rule 606(b) does not control because the juror misconduct at issue allegedly occurred before her case was submitted formally to the jury. In support of her argument, plaintiff contends that the text of Rule 606(b) limits its application to matters occurring during deliberations. *See* N.C.G.S. § 8C-1, Rule 606(b) (stating in part that "a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations"). Plaintiff also relies upon the reasoning of the dissenting opinion in *Tanner*.[3] *See Tanner*, 483 U.S. at 134-42, 97

---

3. As a matter of appellate practice, we must note our disapproval of plaintiff's counsel's failure to cite to authority properly in his brief. Counsel failed to indicate that his quotations from *Tanner* came from Justice Marshall's dissenting opinion. Further, without properly setting forth the case's subsequent history, counsel inappropriately quoted from a Court of Appeals opinion that we reversed. *See Lindsey v.*

L. Ed. 2d at 115-20 (Marshall, J., concurring in part and dissenting in part). It appears that only one jurisdiction has adopted this interpretation. *See State v. Cherry*, 341 Ark. 924, 928-29, 20 S.W.3d 354, 357 (2000) (concluding in a 4-3 decision that Arkansas Rule of Evidence 606(b) and *Tanner* did not apply to juror discussions in a criminal case before formal deliberations commenced). *But see Larson v. State*, 79 P.3d 650, 656 (Alaska Ct. App. 2003) (stating that this interpretation—although "tenable"—is "incompatible with the policies underlying" Alaska Rule of Evidence 606(b), which focuses on the type rather than the timing of the impropriety alleged).

Notwithstanding the fact that at least one jurisdiction has found merit in plaintiff's contentions, we find these arguments unpersuasive. Instead, we hold that Rule 606(b) of the North Carolina Rules of Evidence bars jurors from testifying during consideration of post-verdict motions seeking relief from an order or judgment about alleged predeliberation misconduct by their colleagues. *See Tanner*, 483 U.S. at 116, 97 L. Ed. 2d at 103; *United States v. Cuthel*, 903 F.2d 1381, 1383 (11th Cir. 1990) (stating that Fed. R. Evid. 606(b) controls "even where the inquiry concerns misconduct prior to the deliberations"); *Larson*, 79 P.3d at 653. We observe that *Tanner* involved juror misconduct that allegedly occurred "throughout the trial," including the time before the case was submitted formally to the jury. *Tanner*, 483 U.S. at 116, 97 L. Ed. 2d at 103. But as noted above, determining whether jurors may present post-verdict testimony about alleged juror misconduct pursuant to Rule 606(b) depends on "the nature of the allegation," not when the misconduct allegedly occurred. *See id.* at 117-18; 97 L. Ed. 2d at 104 ("Clearly a rigid distinction based only on whether the event took place inside or outside the jury room would have been quite unhelpful."); *Larson*, 79 P.3d at 653 ("We hold that the admissibility of juror affidavits under [Alaska] Rule 606(b) turns on the *type* of impropriety they describe, not the timing of that impropriety.")

Denying a verdict the protection of Rule 606(b) merely because alleged juror misconduct occurred before the jury began deliberating would vitiate the policies underlying the rule. Without such protection a disgruntled juror could engage in jury nullification simply by making an allegation that juror misconduct occurred before the commencement of deliberations or while the jury was in recess. Such an interpretation strips the rule of all the protection it was designed to

---

*Boddie-Noell Enters., Inc.*, 147 N.C. App. 166, 555 S.E.2d 369 (2001), *rev'd per curiam*, 355 N.C. 487, 562 S.E.2d 420 (2002).

give. We cannot subject Rule 606(b) to potential manipulation and still give effect to its purpose to protect verdicts from attack and jurors from harassment.

The affidavits upon which plaintiff relies allege that, at some point before the case was submitted formally to the jury, Githens told his fellow jurors that "his mind was made up" and he would not change his view of the case. According to Simmons, Githens said the other jurors could either "agree with him or they would sit there through the rest of the year." Simmons stated that Githens's conduct "interfered with [her] thought process about the evidence during the plaintiff's case." Both Simmons and Murphy expressed their belief that Githens's statements inhibited jurors from engaging in full deliberations.

Although these affidavits contain troubling information, nevertheless they are inadmissible pursuant to Rule 606(b). As discussed above, we have interpreted Rule 606(b) to allow jurors to testify about external influences that affected their consideration of the case before them. *Robinson*, 336 N.C. at 124-25, 443 S.E.2d at 329-30. As described in the Simmons and Murphy affidavits—and even by his own admission—Githens's statements do not constitute an external influence as we have defined that term, *see id.*, nor do they pertain to "whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror," N.C.G.S. § 8C-1, Rule 606(b). Rather, Githens's statements are more properly described as an internal influence because, as recounted in the Simmons and Murphy affidavits, these statements reflect Githens's state of mind about the case. *See Robinson*, 336 N.C. at 125, 443 S.E.2d at 329. As such, the statements speak to "the effect of anything upon [his] . . . mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith." *Id.* (quotation marks omitted); N.C.G.S. § 8C-1, Rule 606(b). Even if Githens had made up his mind before plaintiff introduced any evidence, this state of mind is precisely the type of information that Rule 606(b) excludes. Consequently, the affidavits of Simmons and Murphy were inadmissible pursuant to Rule 606(b).

Exclusion of these affidavits also is consistent with the policies that support the rule. "The values sought to be promoted by excluding the evidence include freedom of deliberation, stability and finality of verdicts, and protection of jurors against annoyance and embarrassment." N.C.G.S. § 8C-1, Rule 606 cmt. para. 6. As we have

observed, allowing jurors to testify about misconduct by their fellow jurors would frustrate these policy goals. *See Quesinberry*, 325 N.C. at 134-35, 381 S.E.2d at 687-88; *Johnson*, 100 N.C. at 141, 5 S.E. at 670 (noting the consequences of allowing juror testimony to impeach verdicts in contradiction of the common law rule). Most notably, allowing consideration of affidavits like those at issue could encourage dissatisfied litigants to annoy, embarrass, and harass jurors until some evidence of juror misconduct is uncovered in the hopes of delaying or perhaps undermining implementation of a verdict. Like the Court in *Tanner*, we acknowledge that in some cases the losing party may obtain evidence of substantial injustice or unfairness, but we are uncertain "that the jury system could survive" even the most well-intentioned "efforts to perfect it." *Tanner*, 483 U.S. at 120, 97 L. Ed. 2d at 106.

According to the trial transcript, the trial court repeatedly admonished the jurors not to discuss the case until instructed by the court to do so. In light of these repeated warnings, we must conclude that Githens's colleagues were aware that his alleged statements violated the trial court's clear instructions. Further, the trial transcript indicates that the jury knew exactly how to address this type of misconduct. On 11 December 2008—at the end of the seventh day of trial—one of the jurors informed the bailiff that Githens was "taking pictures of some of the documents and exhibits with his cell phone." The trial court questioned Githens about these allegations the next day in the presence of counsel for both parties. Following its inquiry, the trial court elected to keep Githens on the jury, but warned him not to take any more photographs with his cell phone. This willingness by at least one juror to report misconduct undermines the credibility of the affidavits upon which plaintiff relies.

Pursuant to Civil Procedure Rule 59(a)(2), evidence of juror misconduct constitutes sufficient grounds for a trial court to grant a new trial to "all or any of the parties." N.C.G.S. § 1A-1, Rule 59(a)(2) (2009). Nevertheless, we long have held that evidence of juror misconduct must come from a source other than the jury. *M'Leod*, 8 N.C. (1 Hawks) at 346. The General Assembly codified this common law principle in Rule 606(b). *Robinson*, 336 N.C. at 124, 443 S.E.2d at 329. We acknowledge that this case involves tension between two important policy considerations: (1) ensuring that plaintiff received a fair trial; and (2) protecting the integrity of the jury system. But Rule 606(b) was enacted to "offer[] an accommodation between these competing considerations." N.C.G.S. § 8C-1, Rule 606 cmt. para. 6.

Simply put, Rule 606(b) was designed to prevent precisely what the trial court did here by ordering retrial of a complex medical malpractice case that took more than two weeks to complete and resulted in a unanimous verdict. The court's consideration of the juror affidavits at issue—which describe the mind-set and mental processes of jurors—conflicts with our long-standing precedent, the text of Rule 606(b), and the public policy that supports the rule. Accordingly, we hold that reliance on this evidence was improper pursuant to Rule 606(b). We therefore reverse the trial court's order setting aside the verdict and granting plaintiff a new trial and remand this case to the Court of Appeals with instructions to that court to remand to the trial court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.